**E-FILED**
Tuesday, 07 September, 2004  10:27:48 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| VOLKSWAGEN OF AMERICA, INC., a New Jersey corporation,       Plaintiff,       v.       SŰD'S OF PEORIA, INC., d/b/a Sűd's Volkswagen and Sűd's Audi, an Illinois corporation; GIAN C. SŰD, an Illinois resident HARISH C. SŰD, an Illinois resident; and SUNITI R. SŰD, a Wisconsin resident,       Defendants. | Case No. Equitable relief sought |

**COMPLAINT FOR**
**<u>DECLARATORY AND MONETARY RELIEF</u>**[1]

Plaintiff Volkswagen of America, Inc. ("VWoA"), by and through its attorneys, alleges and states as follows for and as its complaint against the following defendants:  (a) Sűd's of Peoria, Inc., d/b/a Sűd's Volkswagen and d/b/a Sűd's Audi ("Sűd's Volkswagen"); (b) Gian C. Sűd ("Gian Sűd"); (c) Harish C. Sűd ("Harish Sűd"); and (d) Suniti R. Sűd ("Suniti Sűd"):

<u>Nature of Action</u>

1.      VWoA, the United States distributor of Volkswagen vehicles, and Sűd's Volkswagen, a motor vehicle dealer located in Pekin, Illinois, are parties to a Volkswagen Dealer Agreement, pursuant to which Sűd's Volkswagen operates as an authorized Volkswagen dealer in Pekin.

2.      To assist Sűd's Volkswagen in paying for the start-up costs of its dealership operations, VWoA loaned $500,000 to Sűd's Volkswagen.   The loan: (a) required Sűd's

---

[1]      Pursuant to CDIL-LR 5.2, this complaint was filed by electronic means.  However, Exhibits to the complaint were filed by conventional means.

Volkswagen, by January 31, 2004, to acquire property on which to construct a new Volkswagen facility and to provide a warranty deed or other proof of ownership of the property to VWoA; and (b) was secured by a security interest in Süd's Volkswagen's personal property and personal guaranties executed by each of Süd's Volkswagen's three owners. In addition, VWoA entered into two incentive agreements with Süd's Volkswagen pursuant to which VWoA agreed that if Süd's Volkswagen acquired property by January 31, 2004 on which to construct a new Volkswagen facility and provided a warranty deed or other proof of ownership of the property to VWoA, then VWoA would pay to Süd's Volkswagen the following sums of money: (a) $560,000, to pay the principal and interest payments on the loan; and (b) up to $250,000, to assist Süd's Volkswagen in paying for the costs of the new dealership facility.

3.    Süd's Volkswagen failed to acquire ownership of property on which to construct the new Volkswagen facility by January 31, 2004. Süd's Volkswagen also failed to supply VWoA with a warranty deed or other proof of ownership of the property. Süd's Volkswagen, therefore, defaulted on its obligations under the loan documents and failed to satisfy the conditions that would entitle it to receive payments from VWoA under its two incentive agreements with VWoA.

4.    VWoA brings this action to obtain a judgment for breach of contract on each of the loan documents, including each of the personal guaranties executed by each of Süd's Volkswagen's owners. VWoA also brings this action to obtain declarations that it has no obligation to pay any funds to Süd's Volkswagen under either of the two incentive agreements with Süd's Volkswagen.

## Parties

5.    Plaintiff VWoA is a New Jersey corporation, with its principal place of business located at 3800 Hamlin Road, Auburn Hills, Michigan. VWoA is the United States distributor of

Volkswagen vehicles, parts, and accessories. VWoA is also a lender of certain funds to Süd's Volkswagen.

6.     Defendant Süd's Volkswagen is an Illinois corporation, with its principal place of business located at 2350 North 8th Street, Pekin, Illinois. Süd's Volkswagen is an authorized dealer of Volkswagen vehicles, parts, and accessories. Süd's Volkswagen is also a borrower of certain funds from VWoA.

7.     Defendant Gian Süd is an Illinois resident, with his principal place of residence located at 23 Sunset Road, Bloomington, Illinois 61701. Gian Süd is one of the owners of Süd's Volkswagen. Gian Süd is also a guarantor of Süd's Volkswagen's debt obligations to VWoA.

8.     Defendant Harish Süd is an Illinois resident, with his principal place of residence located at 204 Beacon Circle, Bloomington, Illinois 61704. Harish Süd is one of the owners of Süd's Volkswagen. Harish Süd is also a guarantor of Süd's Volkswagen's debt obligations to VWoA.

9.     Defendant Suniti Süd is a Wisconsin resident, with her principal place of residence located at 4000 North Frontage Road, Sheboygan, Wisconsin 61704. Suniti Süd is one of the owners of Süd's Volkswagen. Suniti Süd is also a guarantor of Süd's Volkswagen's debt obligations to VWoA.

**Jurisdiction and Venue**

10.     VWoA is a resident of New Jersey and Michigan. The defendants are residents of Illinois and Wisconsin. The amount in controversy exceeds $75,000, exclusive of interests and costs. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

11.     Süd's Volkswagen maintains its business headquarters and does business within the Central District of Illinois. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## Factual Background

### I.
### The Business of Volkswagen of America, Inc.

12.    VWoA is the United States distributor of Volkswagen brand motor vehicles, parts, and accessories.  VWoA purchases and imports such vehicles, parts, and accessories from its corporate parent, and distributes them to the consuming public through a network of approximately 600 authorized Volkswagen dealers located throughout the country.

### II.
### The Appointment of Süd's Volkswagen As
### an Authorized Volkswagen Dealer.

**A.    The Süd's Volkswagen Dealer Agreement.**

13.    On July 31, 2003, VWoA appointed Süd's Volkswagen as an authorized Volkswagen dealer in Pekin, Illinois.  To effect such appointment, VWoA and Süd's Volkswagen entered into a Volkswagen Dealer Agreement dated July 31, 2003 (the "Süd's Volkswagen Dealer Agreement").  Pursuant to the Süd's Volkswagen Dealer Agreement, VWoA granted Süd's Volkswagen the right to conduct business operations as an authorized dealer of Volkswagen brand vehicles, parts, and accessories at 2350 North 8th Street, Pekin, Illinois 61554. In consideration for this right, Süd's Volkswagen agreed to use its best efforts to promote the sale and service of Volkswagen brand vehicles, parts, and accessories.  A true and accurate copy of the Süd's Volkswagen Dealer Agreement has been filed as Exhibit A to this complaint.

14.    As part of the Süd's Volkswagen Dealer Agreement, Süd's Volkswagen agreed to certain terms and conditions that are contained in the Volkswagen Dealer Agreement Standard Provisions (the "Volkswagen Standard Provisions").  The Volkswagen Standard Provisions are an integral part of the Süd's Volkswagen Dealer Agreement.  The Volkswagen Standard Provisions incorporate by reference the Volkswagen Dealer Operating Standards (the "Volkswagen Operating Standards").  The Volkswagen Operating Standards are also an integral

part of the Süd's Volkswagen Dealer Agreement. Standards Nos. 19 and 20 of the Volkswagen Operating Standards require Süd's Volkswagen to have a facility that complies with the facility requirements defined in the Volkswagen Facility Supplement (the "Volkswagen Facility Supplement") and the Volkswagen Dealer Corporate Identification and Trademark Supplement (the "Volkswagen Corporate Identification Supplement"). These documents both require Süd's Volkswagen's dealership facility to display exterior signage that includes a Volkswagen road pylon, a Volkswagen façade clip, and a Volkswagen façade dealer nameplate that meet VWoA's current corporate identity requirements. A true and accurate copy of the Volkswagen Standard Provisions has been filed as Exhibit B to this complaint. A true and accurate copy of the Volkswagen Operating Standards has been filed as Exhibit C to this complaint. A true and accurate copy of the Volkswagen Facility Supplement has been filed as Exhibit D to this complaint. A true and accurate copy of the Volkswagen Corporate Identification Supplement has been filed as Exhibit E to this complaint.

15.    As part of the Süd's Volkswagen Dealer Agreement, Süd's Volkswagen also entered into an Additional Terms and Conditions Addendum – Facility Construction Agreement (the "Dealer Agreement Addendum"). The Dealer Agreement Addendum is attached as Exhibit C to the Süd's Volkswagen Dealer Agreement, and is an integral part of the Süd's Volkswagen Dealer Agreement. Paragraph 1 of the Dealer Agreement Addendum states, in part, as follows:

> In order to induce VWoA to enter into this Addendum, and the Dealer Agreement of which it is a part, Dealer will construct, at a location approved by VWoA ("New Dealership Premises"), a Marketplace "Dual D" Level Facility (the "Marketplace") including but not limited to, the minimum square footage prescribed in Marketplace requirements, Corporate Identification, Branding Elements, satisfactory compliance with Volkswagen Dealer Operating Standards . . .

Paragraph 2 of the Dealer Agreement Addendum states, in part, as follows:

Dealer shall acquire property at a location approved in advance by VWoA for the construction of the Marketplace Dual D Level Facility enumerated in item 1 above within six (6) months of the execution of this Addendum and shall provide VWoA a copy of the Warranty Deed or other proof of ownership of the real property.

**B.      The Facility Construction Agreement.**

16.      On July 31, 2003, contemporaneous with the execution of the Süd's Volkswagen Dealer Agreement, VWoA and Süd's Volkswagen entered into a Volkswagen/Audi Facility Construction Agreement (the "Facility Construction Agreement"). In the Facility Construction Agreement, VWoA and Süd's Volkswagen acknowledged that Süd's Volkswagen had agreed to construct a new Volkswagen dealership facility. Süd's Volkswagen then agreed to comply with certain terms and conditions with respect to its acquisition of property on which to construct the new facility and with respect to its construction of that facility. Paragraph 3 of the Facility Construction Agreement provides as follows:

Dealer warrants and represents that the Refurbishments will be completed to VWoA's satisfaction in accordance with the timelines below:

a.      Dealer shall acquire property at the location approved in advance by VWoA for the construction of the Marketplace Dual D Level Facility within six (6) months of the execution of this Agreement and shall provide VWoA a copy of the Warranty Deed or other proof of ownership of the real property.

In consideration for this agreement, VWoA agreed that if Süd's Volkswagen acquired the property on which to construct the new dealership facility and actually constructed the facility in compliance with such terms and conditions, VWoA would provide a cash incentive, in an amount of up to $250,000, to Süd's Volkswagen after Süd's Volkswagen completed its construction of the facility. A true and accurate copy of the Facility Construction Agreement has been filed as Exhibit F to this complaint.

## C.    The Security Agreement and Capital Loan Agreement.

17.    On July 31, 2003, contemporaneous with the execution of the Süd's Volkswagen Dealer Agreement and the Facility Construction Agreement, VWoA and Süd's Volkswagen entered into a Security Agreement and Capital Loan Agreement (the "Security and Loan Agreement"). Pursuant to the Security and Loan Agreement, VWoA agreed to issue a note to Süd's Volkswagen, pursuant to which VWoA would loan funds to Süd's Volkswagen to assist it in paying for some of the start-up costs of its Volkswagen operations. In consideration for such agreement, Süd's Volkswagen granted to VWoA a continuing security interest in, to, and under certain collateral. Paragraph 3.1 of the Security and Loan Agreement states as follows:

> As security for the prompt and complete payment and performance when due of all Obligations due Lender, Borrower hereby grants to Lender a continuing security interest in all of Borrower's right, title and interest in, to and under the following Collateral, whether now owned or hereafter acquired:
>
> (a)    all of Borrower's Accounts, Books, Contract Rights, Documents, Instruments, Chattel Paper and General Intangibles;
>
> (b)    all of Borrower's Equipment, furniture, fixtures, machinery and supplies;
>
> (c)    all of Borrower's inventory, including but not limited to all new and used motor vehicles, and all automotive parts and accessories; and
>
> (d)    all Proceeds and products of the foregoing.

Paragraph 3.2 of the Security and Loan Agreement states as follows:

> As further and additional security, Borrower hereby assigns to Lender all credits which are now or hereafter become due to the Borrower from Volkswagen of America, Inc., its subsidiaries, affiliates or associated companies, or such other manufacturer from which Borrower purchases its inventory.

Paragraph 8.1(b) of the Security and Loan Agreement states, in part, as follows:

Each one or more of the following acts or occurrences shall constitute an Event of Default hereunder:

\*                    \*                    \*

(b)    If failure shall be made in the due observance or performance of any covenant, agreement or condition to be performed by Borrower.

Paragraph 8.2 of the Security and Loan Agreement states as follows:

Upon the existence of an Event of Default, all outstanding Obligations of Borrower to Lender will (notwithstanding any provisions to be contrary) without demand or notice of any kind, thereupon immediately become due and payable . . .

Paragraph 10.1 of the Security and Loan Agreement states as follows:

Lender shall, at all times, have the right to setoff and apply any and all credits, monies or properties of Borrower in Lender's possessions or control against any Obligations of Borrower to Lender.

A true and accurate copy of the Security and Loan Agreement has been filed as Exhibit G to this complaint.

## D.    The Memorandum of Understanding – Security and Loan Agreement (Note).

18.    On July 31, 2003, contemporaneous with the execution of the Süd's Volkswagen Dealer Agreement and the Facility Construction Agreement, VWoA and Süd's Volkswagen entered into a Memorandum of Understanding – Security and Loan Agreement (Note) (the "Note"). Pursuant to the Note, VWoA loaned the sum of $500,000 to Süd's Volkswagen. In consideration for such loan, Süd's Volkswagen agreed to repay the principal and accrued interest on the loan and to meet certain loan conditions. Paragraph 2 of the Note provides as follows:

**Loan Terms and Repayment Schedule.** You hereby agree and acknowledge that the interest on the . . . loan is 4.25%, the loan term is for five years, with interest payments made monthly and a principal payment of $100,000 due at the end of each year for the five-year period.

Paragraph 4 of the Note provides as follows:

> **Representation Requirements.** You hereby agree and acknowledge that you have represented to VWoA that you will build exclusive showroom facilities for your . . . Volkswagen brand[] within a twenty-seven month period of closing on your Asset Purchase Agreement with Mid/Town Imports, Pekin, IL. In connection with this construction you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement. FAILURE TO DO SO AT ANYTIME SHALL REQUIRE IMMEDIATE REPAYMENT OF THE LOAN BALANCE AND ACCUMULATED INTEREST. (emphasis in original.)

A true and accurate copy of the Note has been filed as Exhibit H to this complaint.

**E.    The Memorandum of Understanding – Performance Incentive Program.**

19.    On July 31, 2003, contemporaneous with the execution of the Süd's Volkswagen Dealer Agreement and the Facility Construction Agreement, VWoA and Süd's Volkswagen entered into a Memorandum of Understanding – Performance Incentive Program (the "Performance Incentive Agreement"). Pursuant to the Performance Incentive Agreement, VWoA agreed to pay to Süd's Volkswagen the sum of $560,000 over the course of five years. VWoA agreed to pay Süd's Volkswagen $100,000 at the end of each incentive year during the five year period. VWoA also agreed to pay Süd's Volkswagen an additional earned bonus incentive of an additional $60,000 at the end of the fifth incentive year. In consideration for such agreement, Süd's Volkswagen agreed to meet certain VWoA requirements. Paragraph 2 of the Performance Incentive Agreement provides as follows:

> **Standards Requirements.** You hereby agree and acknowledge that to earn the . . . maximum base incentive and bonus incentive you must meet, in all five annual measurement periods, the minimum requirements of the . . . Volkswagen Dealer Operating Standards, as applicable, and as established by the . . . Volkswagen brand . . . from time to time.

Paragraph 4 of the Performance Incentive Agreement provides as follows:

> **Reduction of Base Incentive.** You hereby agree and acknowledge that failure to achieve all of the above-referenced Requirements [which include the requirements in paragraph 4] in any given

measurement period will result in the forfeiture of the entire base incentive payment for that measurement period only.

Paragraph 6 of the Performance Incentive Agreement provides as follows:

> **Representation Requirements.** You hereby agree and acknowledge that you have represented to VWoA that you will build exclusive showroom facilities for your . . . Volkswagen brand[] within a twenty-seven month period of closing on your Asset Purchase Agreement with Mid/Town Imports, Pekin, IL. In connection with this construction you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement. FAILURE TO DO SO AT ANY TIME SHALL DISQUALIFY YOU FROM EARNING THE INCENTIVE PAYMENT IN THE MEASUREMENT PERIOD DURING WHICH THE FAILURE OCCURRED AS WELL AS THE OPPORTUNITY TO EARN ANY FUTURE PAYMENTS. (emphasis original.)

A true and accurate copy of the Performance Incentive Agreement has been filed as Exhibit I to this complaint.

20.     On or about August 20, 2003, VWoA advanced to Süd's Volkswagen a payment of $20,000 under the Performance Incentive Agreement.

## F.     <u>The Personal Guaranties.</u>

21.     On February 24, 2003, prior to the execution of the Süd's Volkswagen Dealer Agreement, but in consideration of VWoA agreeing to enter into the Süd's Volkswagen Dealer Agreement, the Facility Construction Agreement, the Security and Loan Agreement, the Note, and the Performance Incentive Agreement, Gian Süd executed a Personal Guaranty in favor of VWoA (the "Gian Süd Guaranty"). Pursuant to the Gian Süd Guaranty, Gian Süd guaranteed to VWoA "the payment of all indebtedness of [Süd's Volkswagen's] now in existence or hereafter arising out of the [Süd's Volkswagen Dealer Agreement]." The Gian Süd Guarantee provided as follows:

> This is an absolute and continuing guaranty, intended to cover all indebtedness and any number of service and sales transactions between VWoA and Dealer, and all indebtedness arising as a result

thereof, and shall continue in force notwithstanding any change or changes in the form of the Dealer Agreement, any increase in said indebtedness, any further extension or extensions of credit granted by VWoA or any acceptance, sale, exchange or release of any security that may be given to VWoA by Dealer or the undersigned.

In the event Dealer shall fail to pay all or any part of indebtedness when due, whether by acceleration or otherwise, the undersigned will pay to VWoA the amount due and unpaid by Dealer, in like manner as if such amount constituted the direct and primary obligation of the undersigned. VWoA shall not be required, prior to any demand on or payment by the undersigned, to make any demand upon or pursue or exhaust any of VWoA's rights or remedies with respect to any part of any security given to VWoA by Dealer or the undersigned.

A true and accurate copy of the Gian Süd Guaranty has been filed as Exhibit J to this complaint.

22.    On April 28, 2003, prior to the execution of the Süd's Volkswagen Dealer Agreement, but in consideration of VWoA agreeing to enter into the Süd's Volkswagen Dealer Agreement, the Facility Construction Agreement, the Security and Loan Agreement, the Note, and the Performance Incentive Agreement, Harish Süd and Suniti Süd executed a Personal Guaranty in favor of VWoA (the "Harish and Suniti Süd Guaranty"). Pursuant to the Harish and Suniti Süd Guaranty, Harish Süd and Suniti Süd, jointly and severally, guaranteed to VWoA "the payment of all indebtedness of [Süd's Volkswagen's] now in existence or hereafter arising out of the [Süd's Volkswagen Dealer Agreement]." The Harish Süd and Suniti Süd Guarantee provided as follows:

This is an absolute and continuing guaranty, intended to cover all indebtedness and any number of service and sales transactions between VWoA and Dealer, and all indebtedness arising as a result thereof, and shall continue in force notwithstanding any change or changes in the form of the Dealer Agreement, any increase in said indebtedness, any further extension or extensions of credit granted by VWoA or any acceptance, sale, exchange or release of any security that may be given to VWoA by Dealer or the undersigned.

In the event Dealer shall fail to pay all or any part of indebtedness when due, whether by acceleration or otherwise, the undersigned will pay to VWoA the amount due and unpaid by Dealer, in like

manner as if such amount constituted the direct and primary obligation of the undersigned. VWoA shall not be required, prior to any demand on or payment by the undersigned, to make any demand upon or pursue or exhaust any of VWoA's rights or remedies with respect to any part of any security given to VWoA by Dealer or the undersigned.

A true and accurate copy of the Harish and Suniti Süd Guaranty has been filed as Exhibit K to this complaint.

### III.
### The Defaults by Süd's Volkswagen.

23.    After the execution of the Süd's Volkswagen Dealer Agreement, Süd's Volkswagen failed to order, install, or display at its current dealership facility exterior signage that includes a Volkswagen road pylon, a Volkswagen façade clip, and a Volkswagen façade dealer nameplate that meet VWoA's current corporate identity standards. As of the date of filing of this complaint, and despite numerous requests from VWoA that it do so, Süd's Volkswagen has failed to order, install, or display exterior signage that includes a Volkswagen road pylon, a Volkswagen façade clip, and a Volkswagen façade dealer nameplate that meet VWoA's current corporate identity standards.

24.    After the execution of the Süd's Volkswagen Dealer Agreement, Süd's Volkswagen failed to acquire by January 31, 2004 property on which to construct a new Volkswagen dealership facility and failed to provide a warranty deed or other proof of ownership of such property to VWoA. As of the date of the filing of this complaint, and despite numerous requests from VWoA that it do so, Süd's Volkswagen has failed to submit to VWoA a warranty deed or other proof of ownership of the property on which it will construct a new Volkswagen dealership facility.

244424-3                                     12

25.    Süd's Volkswagen has not paid to VWoA the outstanding principal and interest balances on the Note.  Süd's Volkswagen also has not repaid to VWoA the $20,000 that VWoA advanced to it under the Performance Incentive Agreement.

## Legal Counts

### Count I
### Breach of the Facility Construction Agreement
### Claim for Declaratory Relief against Süd's Volkswagen

26.    VWoA realleges and incorporates by reference paragraphs 1 through 25 as if fully stated in this paragraph.

27.    The Facility Construction Agreement is a valid, binding, and enforceable contract between Süd's Volkswagen and VWoA.

28.    VWoA has at all times complied with its obligations under the Facility Construction Agreement.

29.    By failing to acquire property for the construction of a new Volkswagen dealership facility on or before January 31, 2004, and by failing to submit a warranty deed or other proof of ownership to VWoA, Süd's Volkswagen materially breached the Facility Construction Agreement.

30.    Süd's Volkswagen's material breach of the Facility Construction Agreement caused, and continues to cause, damage to VWoA.

31.    VWoA has taken the position that, because of Süd's Volkswagen's breach of the Facility Construction Agreement, it has no obligation to pay any funds to Süd's Volkswagen under the Facility Construction Agreement.  On information and belief, Süd's Volkswagen has taken the position that VWoA does have an obligation to pay funds to it under the Facility Construction Agreement.  An actual controversy exists between VWoA and Süd's Volkswagen

244424-3                                             13

with respect to their respective contractual rights and obligations under the Facility Construction Agreement.

WHEREFORE, VWoA respectfully requests that that Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a)    A declaration that Süd's Volkswagen has breached the Facility Construction Agreement;

(b)    A declaration that VWoA has no obligation to pay any funds to Süd's Volkswagen under the Facility Construction Agreement;

(c)    A declaration that Süd's Volkswagen has no right to receive any funds from VWoA under the Facility Construction Agreement;

(d)    Recovery of its costs and expenses; and

(e)    Other and further relief as the Court determines to be just and equitable.

**Count II**
**Breach of the Note**
**Claim for Monetary Relief against Süd's Volkswagen**

32.    VWoA realleges and incorporates by reference paragraphs 1 through 25 as if fully stated in this paragraph.

33.    The Note is a valid, binding, and enforceable contract between Süd's Volkswagen and VWoA.

34.    VWoA has at all times complied with its obligations under the Note.

35.    By failing to acquire property for the construction of a new Volkswagen dealership facility on or before January 31, 2004 as required by the Facility Construction Agreement, and by failing to submit a warranty deed or other proof of ownership of the property to VWoA as also required by the Facility Construction Agreement, Süd's Volkswagen became obligated to repay immediately the outstanding principal and interest balances on the Note.

36.    Süd's Volkswagen failed to repay the outstanding principal and interest balances on the Note.  Accordingly, Süd's Volkswagen materially breached the Note.

37.    Süd's Volkswagen's material breach of the Note caused, and continues to cause, damage to VWoA in the form of the unpaid and outstanding principal and interest balances on the Note.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

38.    Monetary damages in the amount of the unpaid and outstanding principal and interest balances on the Note;

39.    Pre-judgment interest;

40.    Recovery of its costs and expenses; and

41.    Other and further relief as the Court determines to be just and equitable.

**Count III**
**Breach of the Performance Incentive Agreement**
**Claim for Declaratory and Monetary Relief against Süd's Volkswagen**

42.    VWoA realleges and incorporates by reference paragraphs 1 through 25 as if fully stated in this paragraph.

43.    The Performance Incentive Agreement is a valid, binding, and enforceable contract between Süd's Volkswagen and VWoA.

44.    VWoA has at all times complied with its obligations under the Performance Incentive Agreement, including advancing to Süd's Volkswagen a $20,000.00 payment under the Performance Incentive Agreement.

45.    By failing to order, install, or display at its current dealership premises a Volkswagen road pylon, a Volkswagen façade clip, and a Volkswagen façade dealer nameplate that comply with VWoA's current corporate identity standards, Süd's Volkswagen became

disqualified from earning the incentive payment for the first incentive year under the Performance Incentive Agreement.

46.    By failing to acquire property for the construction of a new Volkswagen dealership facility on or before January 31, 2004 as required by the Facility Construction Agreement, and by failing to submit a warranty deed or other proof of ownership of the property to VWoA as also required by the Facility Construction Agreement, Süd's Volkswagen became disqualified from earning any incentive payment for any incentive year under the Performance Incentive Agreement.

47.    Upon becoming disqualified to receive incentive payments under the Performance Incentive Agreement, Süd's Volkswagen failed to repay to VWoA the $20,000 advance that VWoA had made to Süd's Volkswagen under the Performance Incentive Agreement. Accordingly, Süd's Volkswagen materially breached the Performance Incentive Agreement.

48.    Süd's Volkswagen's material breach of the Performance Incentive Agreement caused, and continues to cause, damage to VWoA in the amount of the not repaid $20,000 advance on the Performance Incentive Agreement.

49.    VWoA has taken the position that, because of Süd's Volkswagen's breach of the Performance Incentive Agreement, it has no obligation to pay any funds to Süd's Volkswagen under the Performance Incentive Agreement. On information and belief, Süd's Volkswagen has taken the position that VWoA does have an obligation to pay funds to it under the Performance Incentive Agreement. An actual controversy exists between VWoA and Süd's Volkswagen as to their respective contractual rights and obligations under the Performance Incentive Agreement.

WHEREFORE, VWoA respectfully requests that that Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a)    Monetary damages in the amount of $20,000;

(b)    Pre-judgment interest;

(c)    A declaration that Süd's Volkswagen has breached the Performance Incentive Agreement;

(d)    A declaration that VWoA has no obligation to pay any funds to Süd's Volkswagen under the Performance Incentive Agreement, including any funds for the first incentive year under the Performance Incentive Agreement;

(e)    A declaration that Süd's Volkswagen has no right to receive any funds from VWoA under the Performance Incentive Agreement, including any funds for the first incentive year under the Performance Incentive Agreement;

(f)    Recovery of its costs and expenses; and

(g)    Other and further relief as the Court determines to be just and equitable.

### Count IV
### Security and Loan Agreement
### Claim for Declaratory Relief against Süd's Volkswagen

50.    VWoA realleges and incorporates by reference paragraphs 1 through 25 as if fully stated in this paragraph.

51.    The Security and Loan Agreement is a valid, binding, and enforceable contract between Süd's Volkswagen and VWoA.

52.    VWoA has at all times complied with its obligations under the Security and Loan Agreement.

53.    By failing to pay to VWoA amounts due under the Note and the Performance Incentive Agreement, an event of default occurred under the Security and Loan Agreement.

54.    VWoA has taken the position that, because of the event of default under the Security and Loan Agreement, it has the right to set off and apply any and all credits and monies owing from VWoA to Süd's Volkswagen against the unpaid and outstanding principal and

accrued interest balances on the Note and against the not repaid advance on the Performance Incentive Agreement, including by asserting a charge-back on Süd's Volkswagen's dealership parts account. On information and belief, Süd's Volkswagen has taken the position that VWoA does not have the right to set off and apply any and all credits and monies owing from VWoA to Süd's Volkswagen against the unpaid and outstanding principal and accrued interest balances on the Note and against the not repaid advance on the Performance Incentive Agreement, including by asserting a charge-back on Süd's Volkswagen's dealership parts account. An actual controversy exists between VWoA and Süd's Volkswagen as to their respective contractual rights and obligations under the Security and Loan Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a)    A declaration that an event of default has occurred on the Security and Loan Agreement;

(b)    A declaration that VWoA has the right to set off and apply any and all credits and monies owing from VWoA to Süd's Volkswagen against the unpaid and outstanding principal and accrued interest balances on the Note and against the not repaid advance on the Performance Incentive Agreement, including by asserting a charge-back on Süd's Volkswagen's dealership parts account;

(c)    Recovery of its costs and expenses; and

(d)    Other and further relief as the Court determines to be just and equitable.

### Count V
### Breach of the Gian Süd Guaranty
### Claim for Monetary Relief against Gian Süd

55.    VWoA realleges and incorporates by reference paragraphs 1 through 25 as if fully stated in this paragraph.

56.    The Gian Süd Guaranty is a valid, binding, and enforceable contract between Gian Süd and VWoA.

57.    VWoA has at all times complied with its obligations under the Gian Süd Guaranty.

58.    By failing to pay to VWoA amounts due under the Note and the Performance Incentive Agreement, Süd's Volkswagen caused Gian Süd to become obligated under the Gian Süd Guaranty to pay immediately to VWoA the unpaid principal and accrued interest balances on the Note and the not repaid advance on the Performance Incentive Agreement.

59.    Gian Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note.  Gian Süd failed to pay to VWoA the not repaid advance on the Performance Incentive Agreement.  Accordingly, Gian Süd materially breached the Gian Süd Guaranty.

60.    Gian Süd's material breach of the Gian Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the not repaid advance on the Performance Incentive Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Gian Süd, and grant it the following relief:

(a)    Monetary damages in the amount of the unpaid and outstanding principal and accrued interest balances on the Note;

(b)    Monetary damages in the amount of the not repaid advance on the Performance Incentive Agreement;

(c)    Pre-judgment interest;

(d)    Recovery of its costs and expenses; and

(e)    Other and further relief as the Court determines to be just and equitable.

## Count VI
## Breach of the Harish and Suniti Süd Guaranty
## <u>Claim for Monetary Relief against Harish Süd and Suniti Süd</u>

61.    VWoA realleges and incorporates by reference paragraphs 1 through 25 as if fully stated in this paragraph.

62.    The Harish and Suniti Süd Guaranty is a valid, binding, and enforceable contract between Harish and Suniti Süd, jointly and severally, and VWoA.

63.    VWoA has at all times complied with its obligations under the Harish and Suniti Süd Guaranty.

64.    By failing to pay to VWoA amounts due under the Note and the Performance Incentive Agreement, Süd's Volkswagen caused Harish Süd and Suniti Süd to become obligated, jointly and severally, under the Harish and Suniti Süd Guaranty to pay immediately to VWoA the unpaid principal and accrued interest balances on the Note and the not repaid advance on the Performance Incentive Agreement.

65.    Harish Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note.  Harish Süd failed to pay to VWoA the not repaid advance on the Performance Incentive Agreement.  Accordingly, Harish Süd materially breached the Harish and Suniti Süd Guaranty.

66.    Suniti Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note.  Suniti Süd failed to pay to VWoA the not repaid advance on the Performance Incentive Agreement.  Accordingly, Suniti Süd materially breached the Harish and Suniti Süd Guaranty.

67.    Harish Süd's material breach of the Harish and Suniti Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest

balances on the Note and in the form of the not repaid advance on the Performance Incentive Agreement.

68.    Suniti Süd's material breach of the Harish and Suniti Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the not repaid advance on the Performance Incentive Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Harish Süd and Suniti Süd, jointly and severally, and grant it the following relief:

(a)    Monetary damages in the amount of the unpaid and outstanding principal and accrued interest balances on the Note;

(b)    Monetary damages in the amount of the not repaid advance on the Performance Incentive Agreement;

(c)    Pre-judgment interest;

(d)    Recovery of its costs and expenses; and

(e)    Other and further relief as the Court determines to be just and equitable.

Dated: September 3, 2004.

Respectfully submitted,

VOLKSWAGEN OF AMERICA, INC.

By:  s/ James R. Vogler
        One of Its Attorneys

James R. Vogler – Lead Counsel (Illinois Bar No. 2908395)
Brock F. Renner (Illinois Bar No. 6269283)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.:  (312) 984-3150
E-mail: james.vogler@bfkpn.com
        brock.renner@bfkpn.com

Of Counsel:
Randall L. Oyler (Illinois Bar No. 6209675)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.:  (312) 984-3150
E-mail: randall.oyler@bfkpn.com

244424-3

22