UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| VOLKSWAGEN OF AMERICA, INC., a New Jersey corporation, <br><br> Plaintiff, <br><br> v. <br><br> SŰD'S OF PEORIA, INC., d/b/a Sűd's Volkswagen and Sűd's Audi, an Illinois corporation; GIAN SŰD, an Illinois resident HARISH SŰD, an Illinois resident; and SUNITI SŰD, a Wisconsin resident, <br><br> Defendants. | Case No. 04 CV 01306 |

**FIRST AMENDED COMPLAINT FOR
MONETARY RELIEF[1]**

Volkswagen of America, Inc. ("VWoA"), alleges against Sűd's of Peoria, Inc., d/b/a Sűd's Volkswagen and d/b/a Sűd's Audi ("Sűd's"); Gian Sűd; Harish Sűd; and Suniti Sűd as follows:

**Nature of Action**

1. VWoA brings this action to recover $500,000 due on a loan, and the refunding of a $20,000 advance, made to one of its dealers in connection with certain commitments by that dealer to build a new facility. Specifically, in July, 2003, VWoA loaned Sűd's $500,000 for a term of five years, with interest due monthly and principal payments of $100,000 due at the end of each year of the term. In addition, in August, 2003, VWoA advanced Sűd's $20,000 towards anticipated incentives that could be earned under a performance incentive program. Both the loan and the advance required Sűd's to build an exclusive showroom for its Volkswagen brand

---

[1] Pursuant to CDIL-LR 5.2, this complaint was filed by electronic means. However, Exhibits to the complaint were filed by conventional means.

vehicles by a certain deadline, in accordance with a facilities construction agreement that established a schedule for the completion of various stages of the construction. Contrary to those obligations, Süd's failed to make the first of the required $100,000 principal payments under the loan, and has failed to adhere to the contractually required schedule for the construction of its new facility. As a consequence, under the terms of the governing agreements, the entire $500,000 loan balance is due immediately and the $20,000 advance must be refunded.

## Parties

2.      Plaintiff VWoA, a New Jersey corporation with its principal place of business located at 3800 Hamlin Road, Auburn Hills, Michigan, distributes Volkswagen brand vehicles, parts, and accessories through a network of over 600 authorized dealers. VWoA is also the lender of certain funds to Süd's.

3.      Defendant Süd's, an Illinois corporation with its principal place of business located at 2350 North 8th Street, Pekin, Illinois, is an authorized Volkswagen dealer and the borrower of certain funds from VWoA.

4.      Defendant Gian Süd, an Illinois resident with his principal place of residence located at 23 Sunset Road, Bloomington, Illinois, is one of the owners of Süd's and a guarantor of Süd's debt obligations to VWoA.

5.      Defendant Haris Süd, an Illinois resident with his principal place of residence located at 204 Beacon Circle, Bloomington, Illinois, is one of the owners of Süd's and a guarantor of Süd's debt obligations to VWoA.

6.      Defendant Suniti Süd, a Wisconsin resident with her principal place of residence located at 4000 North Frontage Road, Sheboygan, Wisconsin, is one of the owners of Süd's and a guarantor of Süd's debt obligations to VWoA.

## Jurisdiction and Venue

7.  VWoA is a resident of New Jersey and Michigan. The defendants are residents of Illinois and Wisconsin. The amount in controversy exceeds $75,000, exclusive of interests and costs. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

8.  Süd's maintains its business headquarters and does business within the Central District of Illinois. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## Factual Background

### A. The Dealer Agreement.

9.  Süd's is an authorized Volkswagen dealer in Pekin, Illinois. VWoA and Süd's are parties to a Volkswagen Dealer Agreement (the "Dealer Agreement"), which consists of, among other documents, an executed dealer agreement form (Exhibit A), the Volkswagen Dealer Agreement Standard Provisions (the "Standard Provisions") (Exhibit B), and the Volkswagen Dealer Operating Standards (the "Operating Standards") (Exhibit C).

10. Standards Nos. 19 and 20 of the Operating Standards require Süd's to operate out of a facility that complies with the facility requirements defined in the Volkswagen Facility Supplement (Exhibit D) and the Volkswagen Dealer Corporate Identification and Trademark Supplement (Exhibit E). Both of these documents require Süd's dealership facility to display exterior signage that includes a Volkswagen façade dealer nameplate that meets VWoA's current corporate identity requirements.

### B. The Facility Construction Agreement.

11. On July 31, 2003, VWoA and Süd's entered into a Volkswagen/Audi Facility Construction Agreement (the "Facility Construction Agreement") (Exhibit F), under which VWoA would pay Süd's up to $250,000 in consideration for Süd's completing its new facility in

accordance with an agreed upon schedule. Specifically, paragraph 3 of the Facility Construction Agreement provides:

> Dealer warrants and represents that the Refurbishments will be completed to VWoA's satisfaction in accordance with the timelines below:
>
> a. Dealer shall acquire property at a location approved in advance by VWoA for the construction of the Marketplace Dual D Level Facility within six (6) months of the execution of this Agreement **[i.e., by January 31, 2004]** and shall provide VWoA a copy of the Warranty Deed or other proof of ownership of the real property;
>
> b. Within three (3) months of acquiring the property **[i.e., by April 30, 2004]**, Dealer shall complete the necessary survey of the New Dealership Premises, which survey shall determine the required design and construction for the Marketplace Facility;
>
> c. Within nine (9) months of acquiring the property **[i.e., by October 31, 2004]**, Dealer shall complete and submit to VWoA for its review and approval, construction drawings for the Marketplace Facility. If VWoA submits comments to Dealer on the construction drawings, within 15 business days of Dealer's receipt of such comments, Dealer shall complete and submit to VWoA for its review and approval revised construction drawings for the Marketplace Facility. Within 5 business days of Dealer's receipt of VWoA's approval of Dealer's construction drawings, Dealer shall submit such drawings, together with any and all other necessary documents to the appropriate agency or agencies within the City of Peoria, IL for the obtaining of all necessary building permits for the construction of the Marketplace Facility. Dealer shall comply promptly with each requirement of such agency or agencies for the obtaining of such permits; and
>
> d. Within twelve (12) months of acquiring the property **[i.e., by January 31, 2005]**, Dealer shall begin construction of the Marketplace Facility.

### C.   The $500,000 Loan, and $20,000 Advance on the Performance Incentive Agreement.

12.   Contemporaneously with the agreement described above, Süd's entered into four agreements under which VWoA agreed to provide certain loans and incentives in connection with Süd's agreement to construct its new facility. The first of these is a Security Agreement and Capital Loan Agreement (the "Loan Agreement") (Exhibit G), to be documented by a note, under which VWoA agreed to loan Süd's $500,000 to be used as working capital. The second agreement is the note itself, captioned a "Memorandum of Understanding-Capital Loan Agreement (Note)" (the "Note") (Exhibit H). The third agreement is an agreement to provide Süd's certain performance-based incentives, captioned the "Memorandum of Understanding-Performance Incentive Program" (the "Incentive Agreement") (Exhibit I). The fourth agreement (actually signed about a month later) documented a $20,000 advance against the Incentive Agreement.

13.   Under the terms of the Note and Loan Agreement, Süd's is required to make annual principal payments of $100,000 at the end of each year of the five-year term, and is also required to build its new facility in accordance with the agreed upon schedule. Specifically, paragraph 2 of the Note provides:

> **Loan Terms and Repayment Schedule.** You hereby agree and acknowledge that the interest on the . . . loan is 4.25%, the loan term is for five years, with interest payments made monthly and a principal payment of $100,000 due at the end of each year for the five-year period.

And paragraph 4 of the Note provides:

> **Representation Requirements.** You hereby agree and acknowledge that you have represented to VWoA that you will build exclusive showroom facilities for your . . . Volkswagen brand[] within a twenty-seven month period of closing on your Asset Purchase Agreement with Mid/Town Imports, Pekin, IL. In connection with this construction you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement. FAILURE TO DO SO AT

244424-3                                    5

ANYTIME SHALL REQUIRE IMMEDIATE REPAYMENT OF
THE LOAN BALANCE AND ACCUMULATED INTEREST.
(emphasis in original.)

**D.     The Personal Guaranties.**

14.     In connection with the issuance of the Dealer Agreement, Gian, Harish and Suniti Süd each executed a personal guaranties in favor of VWoA under which each guaranteed to VWoA "the payment of all indebtedness of [Süd's] now in existence or hereafter arising out of the [Dealer Agreement]." Gian's guaranty is contained at <u>Exhibit J</u> and Harish's and Suniti's guaranties are contained at <u>Exhibit K</u>. Each guarantee provides:

> This is an absolute and continuing guaranty, intended to cover all indebtedness and any number of service and sales transactions between VWoA and Dealer, and all indebtedness arising as a result thereof, and shall continue in force notwithstanding any change or changes in the form of the Dealer Agreement, any increase in said indebtedness, any further extension or extensions of credit granted by VWoA or any acceptance, sale, exchange or release of any security that may be given to VWoA by Dealer or the undersigned.
>
> In the event Dealer shall fail to pay all or any part of indebtedness when due, whether by acceleration or otherwise, the undersigned will pay to VWoA the amount due and unpaid by Dealer, in like manner as if such amount constituted the direct and primary obligation of the undersigned. VWoA shall not be required, prior to any demand on or payment by the undersigned, to make any demand upon or pursue or exhaust any of VWoA's rights or remedies with respect to any part of any security given to VWoA by Dealer or the undersigned.

**E.     Süd's Defaults.**

15.     In violation of the provisions of the Note and the Loan Agreement, Süd's failed to make the first $100,000 principal payment, which was due on July 31, 2004, the first anniversary of the Note.

16.     In violation of the provisions of the Note and Loan Agreement, and as reflected in a letters dated January 26, 2004, February 17, 2004, February 27, 2004, April 23, 2004, July 19, 2004 and February 18, 2005 (<u>Exhibit L</u>), Süd's also failed: (a) to acquire property for its new

facility and provide a warranty deed or other proof of ownership reflecting proof of such acquisition, by the required date of January 31, 2004; (b) to complete the necessary survey of the new facility, by the required date of April 30, 2004; (c) to complete and submit to VWoA for its review and approval, construction drawings for the new facility, by the required date of October 31, 2004; and (d) to begin construction of the new facility, by the required date of January 31, 2005.

17. In violation of the provisions of the Incentive Agreement, which, in turn, requires compliance with the Volkswagen Facility Supplement and the Volkswagen Corporate Identification Supplement, Süd's failed to timely install the required exterior signage.

<b><u>Legal Counts</u></b>

<b>Count I<br>Breach of the Note<br><u>Claim for Monetary Relief against Süd's</u></b>

18. VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

19. The Note is a valid, binding, and enforceable contract between Süd's and VWoA.

20. VWoA has at all times complied with its obligations under the Note.

21. Süd's became obligated to repay immediately the outstanding principal and interest balances on the Note when it failed: (a) to acquire property on which to construct a new Volkswagen facility and to provide a warranty deed or other proof of ownership of the property to VWoA by January 31, 2004; (b) to complete the necessary survey of the new facility by April 30, 2004; (c) to complete and submit to VWoA for its review and approval, construction drawings for the new facility by October 31, 2004; and (d) to begin construction of the new facility by January 31, 2005.

22. Süd's failure to repay the first $100,000 of principal on the Note when due constituted a material breach of the Note.

23. Süd's breach caused, and continues to cause, damage to VWoA in the form of the unpaid and outstanding principal on the Note in the amount of $500,000, plus any unpaid interest thereon.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a) Monetary damages in the amount of the unpaid and outstanding principal and interest balances on the Note;

(b) Pre-judgment interest;

(c) Recovery of its costs and expenses; and

(d) Other and further relief as the Court determines to be just and equitable.

## Count II
### Breach of the Performance Incentive Agreement
### Claim for Monetary Relief against Süd's

24. VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

25. The Incentive Agreement is a valid, binding, and enforceable contract between Süd's and VWoA.

26. VWoA has at all times complied with its obligations under the Incentive Agreement, including advancing to Süd's a $20,000 payment under that Agreement.

27. By failing to order, install, or display at its current dealership premises a Volkswagen façade dealer nameplate that complies with VWoA's current corporate identity standards, Süd's became disqualified from earning the incentive payment for the first incentive year under the Incentive Agreement.

244424-3                                              8

28. Süd's further became disqualified from earning any incentive payment for any incentive year under the Incentive Agreement when it failed: (a) to acquire property on which to construct a new Volkswagen facility and to provide a warranty deed or other proof of ownership of the property to VWoA by January 31, 2004; (b) to complete the necessary survey of the new facility by April 30, 2004; (c) to complete and submit to VWoA for its review and approval, construction drawings for the new facility by October 31, 2004; and (d) to begin construction of the new facility by January 31, 2005.

29. Upon becoming disqualified to receive incentive payments under the Incentive Agreement, Süd's failed to repay to VWoA the $20,000 Advance that VWoA had made to Süd's under that Agreement, which constituted a material breach thereof.

30. Süd's breach caused, and continues to cause, damage to VWoA in the amount of the unrefunded $20,000 Advance.

WHEREFORE, VWoA respectfully requests that that Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a) Monetary damages in the amount of $20,000;

(b) Pre-judgment interest;

(c) Recovery of its costs and expenses; and

(d) Other and further relief as the Court determines to be just and equitable.

### Count III
### Breach of Guaranty
### Claim for Monetary Relief against Gian Süd

31. VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

32. The Gian Süd Guaranty is a valid, binding, and enforceable contract between Gian Süd and VWoA.

244424-3                                    9

33.     VWoA has at all times complied with its obligations under the Gian Süd Guaranty.

34.     By failing to pay to VWoA amounts due under the Note and the Incentive Agreement, Süd's Volkswagen caused Gian Süd to become obligated under the Gian Süd Guaranty to pay immediately to VWoA the unpaid principal and accrued interest balances on the Note and the unrefunded Advance on the Incentive Agreement.

35.     Gian Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note.  Gian Süd failed to pay to VWoA the unrefunded Advance on the Incentive Agreement.  Accordingly, Gian Süd breached and is obligated to pay those amounts under the terms of the Gian Süd Guaranty.

36.     Gian Süd's breach of the Gian Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the unrefunded Advance on the Incentive Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Gian Süd, and grant it the following relief:

(a)     Monetary damages in the amount of $500,000 or the unpaid and outstanding principal and accrued interest balances on the Note;

(b)     Monetary damages in the amount of $20,000;

(c)     Pre-judgment interest;

(d)     Recovery of its costs and expenses; and

(e)     Other and further relief as the Court determines to be just and equitable.

## Count IV
### Breach of Guaranty
### Claims for Monetary Relief against Harish Sűd and Suniti Sűd

37. VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

38. The Harish and Suniti Sűd Guaranty is a valid, binding, and enforceable contract between Harish and Suniti Sűd, jointly and severally, and VWoA.

39. VWoA has at all times complied with its obligations under the Harish and Suniti Sűd Guaranty.

40. By failing to pay to VWoA amounts due under the Note and the Incentive Agreement, Sűd's caused Harish Sűd and Suniti Sűd to become obligated, jointly and severally, under the Harish and Suniti Sűd Guaranty to pay immediately to VWoA the unpaid principal and accrued interest balances on the Note and the unrefunded Advance on the Incentive Agreement.

41. Harish Sűd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note. Harish Sűd failed to pay to VWoA the unrefunded Advance on the Incentive Agreement. Accordingly, Harish Sűd materially breached the Harish and Suniti Sűd Guaranty.

42. Suniti Sűd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note. Suniti Sűd failed to pay to VWoA the unrefunded Advance on the Incentive Agreement. Accordingly, Suniti Sűd materially breached the Harish and Suniti Sűd Guaranty.

43. Harish Sűd's breach of the Harish and Suniti Sűd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the unrefunded Advance on the Incentive Agreement.

44.  Suniti Süd's breach of the Harish and Suniti Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the unrefunded Advance on the Incentive Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Harish Süd and Suniti Süd, jointly and severally, and grant it the following relief:

(a)  Monetary damages in the amount of $500,000 or the unpaid and outstanding principal and accrued interest balances on the Note;

(b)  Monetary damages in the amount of $20,000;

(c)  Pre-judgment interest;

(d)  Recovery of its costs and expenses; and

(e)  Other and further relief as the Court determines to be just and equitable.

Dated: March 9, 2005.

Respectfully submitted,

VOLKSWAGEN OF AMERICA, INC.

By:  s/ James R. Vogler
       One of Its Attorneys

James R. Vogler – Lead Counsel (Illinois Bar No. 2908395)
Brock F. Renner (Illinois Bar No. 6269283)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.: (312) 984-3150
E-mail: james.vogler@bfkpn.com
        brock.renner@bfkpn.com

Of Counsel:
Randall L. Oyler (Illinois Bar No. 6209675)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700

244424-3                                                           12

Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.:  (312) 984-3150
E-mail: randall.oyler@bfkpn.com

244424-3                                       13