**E-FILED**

Monday, 14 March, 2005  09:11:58 AM

Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

|  |  |
|---|---|
| VOLKSWAGEN OF AMERICA, INC., a New Jersey corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 CV 01306 |
| SŰD'S OF PEORIA, INC., d/b/a Sŭd's Volkswagen and Sŭd's Audi, an Illinois corporation; GIAN SŰD, an Illinois resident HARISH SŰD, an Illinois resident; and SUNITI SŰD, a Wisconsin resident, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**FILED**

**MAR 1 1 2005**

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## FIRST AMENDED COMPLAINT FOR
## MONETARY RELIEF[1]

Volkswagen of America, Inc. ("VWoA"), alleges against Sŭd's of Peoria, Inc., d/b/a

Sŭd's Volkswagen and d/b/a Sŭd's Audi ("Sŭd's"); Gian Sŭd; Harish Sŭd; and Suniti Sŭd as

follows:

## Nature of Action

1.    VWoA brings this action to recover $500,000 due on a loan, and the refunding of

a $20,000 advance, made to one of its dealers in connection with certain commitments by that

dealer to build a new facility. Specifically, in July, 2003, VWoA loaned Sŭd's $500,000 for a

term of five years, with interest due monthly and principal payments of $100,000 due at the end

of each year of the term. In addition, in August, 2003, VWoA advanced Sŭd's $20,000 towards

anticipated incentives that could be earned under a performance incentive program. Both the

loan and the advance required Sŭd's to build an exclusive showroom for its Volkswagen brand

---

[1]    Pursuant to CDIL-LR 5.2, this complaint was filed by electronic means. However, Exhibits to the complaint were filed by conventional means.

vehicles by a certain deadline, in accordance with a facilities construction agreement that established a schedule for the completion of various stages of the construction. Contrary to those obligations, Süd's failed to make the first of the required $100,000 principal payments under the loan, and has failed to adhere to the contractually required schedule for the construction of its new facility.  As a consequence, under the terms of the governing agreements, the entire $500,000 loan balance is due immediately and the $20,000 advance must be refunded.

## Parties

2.     Plaintiff VWoA, a New Jersey corporation with its principal place of business located at 3800 Hamlin Road, Auburn Hills, Michigan, distributes Volkswagen brand vehicles, parts, and accessories through a network of over 600 authorized dealers. VWoA is also the lender of certain funds to Süd's.

3.     Defendant Süd's, an Illinois corporation with its principal place of business located at 2350 North 8th Street, Pekin, Illinois, is an authorized Volkswagen dealer and the borrower of certain funds from VWoA.

4.     Defendant Gian Süd, an Illinois resident with his principal place of residence located at 23 Sunset Road, Bloomington, Illinois, is one of the owners of Süd's and a guarantor of Süd's debt obligations to VWoA.

5.     Defendant Haris Süd, an Illinois resident with his principal place of residence located at 204 Beacon Circle, Bloomington, Illinois, is one of the owners of Süd's and a guarantor of Süd's debt obligations to VWoA.

6.     Defendant Suniti Süd, a Wisconsin resident with her principal place of residence located at 4000 North Frontage Road, Sheboygan, Wisconsin, is one of the owners of Süd's and a guarantor of Süd's debt obligations to VWoA.

## Jurisdiction and Venue

7.     VWoA is a resident of New Jersey and Michigan. The defendants are residents of Illinois and Wisconsin. The amount in controversy exceeds $75,000, exclusive of interests and costs. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

8.     Süd's maintains its business headquarters and does business within the Central District of Illinois. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## Factual Background

### A.     The Dealer Agreement.

9.     Süd's is an authorized Volkswagen dealer in Pekin, Illinois. VWoA and Süd's are parties to a Volkswagen Dealer Agreement (the "Dealer Agreement"), which consists of, among other documents, an executed dealer agreement form (Exhibit A), the Volkswagen Dealer Agreement Standard Provisions (the "Standard Provisions") (Exhibit B), and the Volkswagen Dealer Operating Standards (the "Operating Standards") (Exhibit C).

10.     Standards Nos. 19 and 20 of the Operating Standards require Süd's to operate out of a facility that complies with the facility requirements defined in the Volkswagen Facility Supplement (Exhibit D) and the Volkswagen Dealer Corporate Identification and Trademark Supplement (Exhibit E). Both of these documents require Süd's dealership facility to display exterior signage that includes a Volkswagen façade dealer nameplate that meets VWoA's current corporate identity requirements.

### B.     The Facility Construction Agreement.

11.     On July 31, 2003, VWoA and Süd's entered into a Volkswagen/Audi Facility Construction Agreement (the "Facility Construction Agreement") (Exhibit F), under which VWoA would pay Süd's up to $250,000 in consideration for Süd's completing its new facility in

accordance with an agreed upon schedule.  Specifically, paragraph 3 of the Facility Construction

Agreement provides:

> Dealer warrants and represents that the Refurbishments will be
> completed to VWoA's satisfaction in accordance with the
> timelines below:
>
>> a.  Dealer shall acquire property at a location approved
>> in advance by VWoA for the construction of the
>> Marketplace Dual D Level Facility within six (6)
>> months of the execution of this Agreement **[i.e., by
>> January 31, 2004]** and shall provide VWoA a copy of
>> the Warranty Deed or other proof of ownership of the
>> real property;
>>
>> b.  Within three (3) months of acquiring the property
>> **[i.e., by April 30, 2004]**, Dealer shall complete the
>> necessary survey of the New Dealership Premises,
>> which survey shall determine the required design and
>> construction for the Marketplace Facility;
>>
>> c.  Within nine (9) months of acquiring the property
>> **[i.e., by October 31, 2004]**, Dealer shall complete and
>> submit to VWoA for its review and approval,
>> construction drawings for the Marketplace Facility.  If
>> VWoA submits comments to Dealer on the construction
>> drawings, within 15 business days of Dealer's receipt of
>> such comments, Dealer shall complete and submit to
>> VWoA for its review and approval revised construction
>> drawings for the Marketplace Facility.    Within 5
>> business days of Dealer's receipt of VWoA's approval
>> of Dealer's construction drawings, Dealer shall submit
>> such drawings, together with any and all other
>> necessary documents to the appropriate agency or
>> agencies within the City of Peoria, IL for the obtaining
>> of all necessary building permits for the construction of
>> the Marketplace Facility.  Dealer shall comply promptly
>> with each requirement of such agency or agencies for
>> the obtaining of such permits; and
>>
>> d.  Within twelve (12) months of acquiring the
>> property **[i.e., by January 31, 2005]**, Dealer shall begin
>> construction of the Marketplace Facility.

4

**C.    The $500,000 Loan, and $20,000 Advance on the Performance Incentive Agreement.**

12.    Contemporaneously with the agreement described above, Süd's entered into four agreements under which VWoA agreed to provide certain loans and incentives in connection with Süd's agreement to construct its new facility. The first of these is a Security Agreement and Capital Loan Agreement (the "Loan Agreement") (Exhibit G), to be documented by a note, under which VWoA agreed to loan Süd's $500,000 to be used as working capital. The second agreement is the note itself, captioned a "Memorandum of Understanding-Capital Loan Agreement (Note)" (the "Note") (Exhibit H). The third agreement is an agreement to provide Süd's certain performance-based incentives, captioned the "Memorandum of Understanding-Performance Incentive Program" (the "Incentive Agreement") (Exhibit I). The fourth agreement (actually signed about a month later) documented a $20,000 advance against the Incentive Agreement.

13.    Under the terms of the Note and Loan Agreement, Süd's is required to make annual principal payments of $100,000 at the end of each year of the five-year term, and is also required to build its new facility in accordance with the agreed upon schedule. Specifically, paragraph 2 of the Note provides:

> **Loan Terms and Repayment Schedule.** You hereby agree and acknowledge that the interest on the . . . loan is 4.25%, the loan term is for five years, with interest payments made monthly and a principal payment of $100,000 due at the end of each year for the five-year period.

And paragraph 4 of the Note provides:

> **Representation Requirements.** You hereby agree and acknowledge that you have represented to VWoA that you will build exclusive showroom facilities for your . . . Volkswagen brand[] within a twenty-seven month period of closing on your Asset Purchase Agreement with Mid/Town Imports, Pekin, IL. In connection with this construction you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement. FAILURE TO DO SO AT

ANYTIME SHALL REQUIRE IMMEDIATE REPAYMENT OF
THE LOAN BALANCE AND ACCUMULATED INTEREST.
(emphasis in original.)

## D.   The Personal Guaranties.

14.   In connection with the issuance of the Dealer Agreement, Gian, Harish and Suniti

Süd each executed a personal guaranties in favor of VWoA under which each guaranteed to

VWoA "the payment of all indebtedness of [Süd's] now in existence or hereafter arising out of

the [Dealer Agreement]." Gian's guaranty is contained at Exhibit J and Harish's and Suniti's

guaranties are contained at Exhibit K. Each guarantee provides:

> This is an absolute and continuing guaranty, intended to cover all
> indebtedness and any number of service and sales transactions
> between VWoA and Dealer, and all indebtedness arising as a result
> thereof, and shall continue in force notwithstanding any change or
> changes in the form of the Dealer Agreement, any increase in said
> indebtedness, any further extension or extensions of credit granted
> by VWoA or any acceptance, sale, exchange or release of any
> security that may be given to VWoA by Dealer or the undersigned.
>
> In the event Dealer shall fail to pay all or any part of indebtedness
> when due, whether by acceleration or otherwise, the undersigned
> will pay to VWoA the amount due and unpaid by Dealer, in like
> manner as if such amount constituted the direct and primary
> obligation of the undersigned. VWoA shall not be required, prior
> to any demand on or payment by the undersigned, to make any
> demand upon or pursue or exhaust any of VWoA's rights or
> remedies with respect to any part of any security given to VWoA
> by Dealer or the undersigned.

## E.   Süd's Defaults.

15.   In violation of the provisions of the Note and the Loan Agreement, Süd's failed to

make the first $100,000 principal payment, which was due on July 31, 2004, the first anniversary

of the Note.

16.   In violation of the provisions of the Note and Loan Agreement, and as reflected in

a letters dated January 26, 2004, February 17, 2004, February 27, 2004, April 23, 2004, July 19,

2004 and February 18, 2005 (Exhibit L), Süd's also failed: (a) to acquire property for its new

244424-3                                                                                  6

facility and provide a warranty deed or other proof of ownership reflecting proof of such acquisition, by the required date of January 31, 2004; (b) to complete the necessary survey of the new facility, by the required date of April 30, 2004; (c) to complete and submit to VWoA for its review and approval, construction drawings for the new facility, by the required date of October 31, 2004; and (d) to begin construction of the new facility, by the required date of January 31, 2005.

17. In violation of the provisions of the Incentive Agreement, which, in turn, requires compliance with the Volkswagen Facility Supplement and the Volkswagen Corporate Identification Supplement, Süd's failed to timely install the required exterior signage.

## Legal Counts

### Count I
### Breach of the Note
### Claim for Monetary Relief against Süd's

18. VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

19. The Note is a valid, binding, and enforceable contract between Süd's and VWoA.

20. VWoA has at all times complied with its obligations under the Note.

21. Süd's became obligated to repay immediately the outstanding principal and interest balances on the Note when it failed: (a) to acquire property on which to construct a new Volkswagen facility and to provide a warranty deed or other proof of ownership of the property to VWoA by January 31, 2004; (b) to complete the necessary survey of the new facility by April 30, 2004; (c) to complete and submit to VWoA for its review and approval, construction drawings for the new facility by October 31, 2004; and (d) to begin construction of the new facility by January 31, 2005.

22.    Süd's failure to repay the first $100,000 of principal on the Note when due constituted a material breach of the Note.

23.    Süd's breach caused, and continues to cause, damage to VWoA in the form of the unpaid and outstanding principal on the Note in the amount of $500,000, plus any unpaid interest thereon.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a)    Monetary damages in the amount of the unpaid and outstanding principal and interest balances on the Note;

(b)    Pre-judgment interest;

(c)    Recovery of its costs and expenses; and

(d)    Other and further relief as the Court determines to be just and equitable.

## Count II
## Breach of the Performance Incentive Agreement
## Claim for Monetary Relief against Süd's

24.    VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

25.    The Incentive Agreement is a valid, binding, and enforceable contract between Süd's and VWoA.

26.    VWoA has at all times complied with its obligations under the Incentive Agreement, including advancing to Süd's a $20,000 payment under that Agreement.

27.    By failing to order, install, or display at its current dealership premises a Volkswagen façade dealer nameplate that complies with VWoA's current corporate identity standards, Süd's became disqualified from earning the incentive payment for the first incentive year under the Incentive Agreement.

244424-3                                                8

28.     Süd's further became disqualified from earning any incentive payment for any incentive year under the Incentive Agreement when it failed: (a) to acquire property on which to construct a new Volkswagen facility and to provide a warranty deed or other proof of ownership of the property to VWoA by January 31, 2004; (b) to complete the necessary survey of the new facility by April 30, 2004; (c) to complete and submit to VWoA for its review and approval, construction drawings for the new facility by October 31, 2004; and (d) to begin construction of the new facility by January 31, 2005.

29.     Upon becoming disqualified to receive incentive payments under the Incentive Agreement, Süd's failed to repay to VWoA the $20,000 Advance that VWoA had made to Süd's under that Agreement, which constituted a material breach thereof.

30.     Süd's breach caused, and continues to cause, damage to VWoA in the amount of the unrefunded $20,000 Advance.

WHEREFORE, VWoA respectfully requests that that Court enter judgment in its favor and against Süd's Volkswagen, and grant it the following relief:

(a)     Monetary damages in the amount of $20,000;

(b)     Pre-judgment interest;

(c)     Recovery of its costs and expenses; and

(d)     Other and further relief as the Court determines to be just and equitable.

### Count III
### Breach of Guaranty
### Claim for Monetary Relief against Gian Süd

31.     VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

32.     The Gian Süd Guaranty is a valid, binding, and enforceable contract between Gian Süd and VWoA.

33. VWoA has at all times complied with its obligations under the Gian Süd Guaranty.

34. By failing to pay to VWoA amounts due under the Note and the Incentive Agreement, Süd's Volkswagen caused Gian Süd to become obligated under the Gian Süd Guaranty to pay immediately to VWoA the unpaid principal and accrued interest balances on the Note and the unrefunded Advance on the Incentive Agreement.

35. Gian Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note. Gian Süd failed to pay to VWoA the unrefunded Advance on the Incentive Agreement. Accordingly, Gian Süd breached and is obligated to pay those amounts under the terms of the Gian Süd Guaranty.

36. Gian Süd's breach of the Gian Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the unrefunded Advance on the Incentive Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor and against Gian Süd, and grant it the following relief:

(a) Monetary damages in the amount of $500,000 or the unpaid and outstanding principal and accrued interest balances on the Note;

(b) Monetary damages in the amount of $20,000;

(c) Pre-judgment interest;

(d) Recovery of its costs and expenses; and

(e) Other and further relief as the Court determines to be just and equitable.

244424-3                                                    10

## Count IV
### Breach of Guaranty
### Claims for Monetary Relief against Harish Süd and Suniti Süd

37.     VWoA realleges and incorporates by reference paragraphs 1 through 17 as if fully stated in this paragraph.

38.     The Harish and Suniti Süd Guaranty is a valid, binding, and enforceable contract between Harish and Suniti Süd, jointly and severally, and VWoA.

39.     VWoA has at all times complied with its obligations under the Harish and Suniti Süd Guaranty.

40.     By failing to pay to VWoA amounts due under the Note and the Incentive Agreement, Süd's caused Harish Süd and Suniti Süd to become obligated, jointly and severally, under the Harish and Suniti Süd Guaranty to pay immediately to VWoA the unpaid principal and accrued interest balances on the Note and the unrefunded Advance on the Incentive Agreement.

41.     Harish Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note. Harish Süd failed to pay to VWoA the unrefunded Advance on the Incentive Agreement. Accordingly, Harish Süd materially breached the Harish and Suniti Süd Guaranty.

42.     Suniti Süd failed to pay to VWoA the unpaid principal and accrued interest balances on the Note. Suniti Süd failed to pay to VWoA the unrefunded Advance on the Incentive Agreement. Accordingly, Suniti Süd materially breached the Harish and Suniti Süd Guaranty.

43.     Harish Süd's breach of the Harish and Suniti Süd Guaranty caused, and continues to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on the Note and in the form of the unrefunded Advance on the Incentive Agreement.

44.   Suniti Süd's breach of the Harish and Suniti Süd Guaranty caused, and continues

to cause, damage to VWoA in the form of the unpaid principal and accrued interest balances on

the Note and in the form of the unrefunded Advance on the Incentive Agreement.

WHEREFORE, VWoA respectfully requests that this Court enter judgment in its favor

and against Harish Süd and Suniti Süd, jointly and severally, and grant it the following relief:

(a)   Monetary damages in the amount of $500,000 or the unpaid and outstanding

principal and accrued interest balances on the Note;

(b)   Monetary damages in the amount of $20,000;

(c)   Pre-judgment interest;

(d)   Recovery of its costs and expenses; and

(e)   Other and further relief as the Court determines to be just and equitable.

Dated: March 9, 2005.

Respectfully submitted,

VOLKSWAGEN OF AMERICA, INC.

By: s/ James R. Vogler
One of Its Attorneys

James R. Vogler – Lead Counsel (Illinois Bar No. 2908395)
Brock F. Renner (Illinois Bar No. 6269283)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.: (312) 984-3150
E-mail: james.vogler@bfkpn.com
        brock.renner@bfkpn.com

Of Counsel:
Randall L. Oyler (Illinois Bar No. 6209675)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700

Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.: (312) 984-3150
E-mail: randall.oyler@bfkpn.com

# EXHIBIT A

# VOLKSWAGEN
## DEALER AGREEMENT



1. **APPOINTMENT.** Volkswagen of America, Inc. ("VWoA"), having a place of business at 3800 Hamlin Road, Auburn Hills, MI 48326, appoints **Sud's of Peoria, Inc.** ("Dealer"), doing business under the fictitious name **Sud's Volkswagen,** having its place of business at **2350 North 8ᵗʰ Street, Pekin, IL 61554** , as an authorized dealer in Volkswagen brand motor vehicles and genuine parts and accessories therefor. Accordingly, the parties agree as follows:

2. **STANDARD PROVISIONS.** The Dealer Agreement Standard Provisions (the "Standard Provisions") (Form No. 97vwstdp), the Dealer Operating Plan (the "Operating Plan") and the Volkswagen Dealer Operating Standards (the "Operating Standards") are part of this Agreement. Any term not defined in this Agreement has the meaning given such term in the Standard Provisions.

3. **OWNERSHIP AND MANAGEMENT.** To induce VWoA to enter into this Agreement, Dealer represents that the persons identified in the Statement of Ownership and Management, which is attached as Exhibit A, are Dealer's Owners and Executives. VWoA is entering into this Agreement in reliance upon these representations, and upon the continued provision by such persons of their personal services in fulfillment of Dealer's obligations under this Agreement. Accordingly, Dealer agrees there will be no change in Dealer's Owners without VWoA's prior written consent, and no change in Dealer's Executives without prior notice to VWoA.

4. **MINIMUM FINANCIAL REQUIREMENTS.** Dealer agrees to comply and maintain compliance with the minimum financial requirements established for Dealer annually in accordance with the Operating Plan and the Operating Standards. Throughout the term of this Agreement those minimum financial requirements are subject to revision by VWoA, after review with Dealer, in light of operating conditions and the development of Dealer's business and business potential.

5. **DEALER'S PREMISES.** VWoA has approved the location of Dealer's Premises as specified in the Dealer Premises Addendum, attached as Exhibit B. Dealer agrees that, without VWoA's prior written consent, it will not (a) make any major structural change in any of Dealer's Premises, (b) change the location of any of Dealer's Premises or (c) establish any additional premises for Dealer's Operations.

# VOLKSWAGEN



6. **EXCLUSION OF WARRANTIES.** EXCEPT FOR DISTRIBUTOR'S WARRANTIES, AND EXCEPT AS PROVIDED IN ARTICLE 9(1) OF THE STANDARD PROVISIONS, THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OR OBLIGATIONS OF THE MANUFACTURER OR DISTRIBUTOR AS TO THE QUALITY OR CONDITION OF AUTHORIZED PRODUCTS, OR AS TO THEIR MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND, TO THE EXTENT PERMITTED BY LAW, DEALER WILL EXCLUDE ANY AND ALL SUCH WARRANTIES AND OBLIGATIONS IN ITS SALES OF AUTHORIZED PRODUCTS.

7. **TERM.** The term of this Agreement begins on the date of its delivery to Dealer or on January 1, 1997, whichever is later. This Agreement shall continue in effect until terminated by either party or superseded by a new Dealer Agreement with VWoA, whichever is earlier.

8. **GOVERNING LAW.** This Agreement will be construed in accordance with the laws of the State of **Illinois**. Should the performance of any obligation under this Agreement violate any valid law of such jurisdiction, then this Agreement shall be deemed modified to the minimum extent necessary to comply with such law.

9. **ADDITIONAL TERMS AND CONDITIONS.** The Addenda attached hereto as Exhibits A through C are part of this Agreement, and are incorporated into this Agreement by this reference. Each may be canceled or superseded at any time by mutual agreement of Dealer and VWoA, through the later execution by both parties of a replacement, which then shall be deemed part of this Agreement.

DATED: _____July 31_____, 20_03_.

**VOLKSWAGEN OF AMERICA, INC.**

BY: _____   BY: _____
Don Hughes                      Frank Petru
Regional Team Leader            Area Executive

**DEALER**

BY: _____
Gian C. Sud
President

2

# VOLKSWAGEN



**EXHIBIT A**
**TO DEALER AGREEMENT DATED**
_JULY 31_ , _2003_.

## STATEMENT OF OWNERSHIP AND MANAGEMENT

1.    Dealer firm name:

**Sud's of Peoria, Inc. d/b/a Sud's Volkswagen.**

2.    Principal place of business:

**2350 North 8th Street, Pekin, IL 61554.**

3.    Dealer is a    ☐    proprietorship

☐    partnership

☐    limited liability company

☒    corporation, incorporated on **2/28/03** under the laws

of the State of **Illinois.**

4.    The following persons are the beneficial and record owners of Dealer:

| Name and Address of Each Record and Beneficial Owner of Dealer | If a Corporation, Number and Class of Shares Number | Class | Percentage of Ownership of Record in Dealer |
|---|---|---|---|
| Gian C. Sud 1430 Ft. Jesse Road at Towanda Normal, IL 61761 | 510 | Common | 51.0% |
| Suniti R. Sud 4000 North Frontage Road Sheboygan, WI 53081 | 340 | Common | 34.0% |
| Harish C. Sud 204 Beacon Circle Bloomington, IL 61704 | 150 | Common | 15.0% |

☐  See Exhibit A1 for additional information.

# VOLKSWAGEN



5.    The following persons are Dealer's Officers:

| Name and Address | Title |
|---|---|
| Gian C. Sud<br>1430 Ft. Jesse Road at Towanda<br>Normal, IL 61761 | President |
| Suniti R. Sud<br>4000 North Frontage Road<br>Sheboygan, WI 53081 | Vice President |
| Harish C. Sud<br>204 Beacon Circle<br>Bloomington, IL 61704 | Treasurer |
| Nancy A. Sud<br>1430 Ft. Jesse Road at Towanda<br>Normal, IL 61761 | Secretary |

6.    The following person is the Authorized Representative of Dealer. As such, this person is an agent of Dealer, and VWoA is entitled to rely on this person's authority to make all decisions on behalf of Dealer with respect to Dealer's Operations.

| Name and Address | Title |
|---|---|
| Suniti R. Sud | Vice President |

Dealer hereby certifies that the foregoing information is true and complete as of the date below. VWoA has entered into this Agreement in reliance upon the qualifications, and the continued provision of personal services in the ownership and management of Dealer by, the persons identified above.

This Exhibit cancels any prior Statement of Ownership and Management.

Dated: _July 31_, 20_03_.

**VOLKSWAGEN OF AMERICA, INC.**

By: _____.
Don Hughes
Regional Team Leader

By: _____
Frank Petru
Area Executive

**DEALER**

By: _____
Gian C. Sud
President

2

Form 97VWXA : h/97dlragr/Vwxa

# VOLKSWAGEN

### EXHIBIT B
### TO DEALER AGREEMENT DATED
_JULY 31_, _2003_.



## DEALER PREMISES ADDENDUM

1.     Dealer firm name:

   **Sud's of Peoria, Inc. d/b/a Sud's Volkswagen.**

2.     VWoA has approved the location of the following premises, and no others, for Dealer's Operations:

   a.     Sales Facilities:

   **2350 North 8th Street, Pekin, IL 61554**

   b.     Authorized Automobile Storage Facilities:

   **2350 North 8th Street, Pekin, IL 61554**

   c.     Service Facilities:

   **2350 North 8th Street, Pekin, IL 61554**

   d.     Genuine Parts Storage Facilities:

   **2350 North 8th Street, Pekin, IL 61554**

   e.     Used Car Lot:

   **2350 North 8th Street, Pekin, IL 61554**

Dealer hereby certifies that the foregoing information is true and complete as of the date below.

This Exhibit cancels any prior Dealer Premises Addendum.

Dated: _July 31_, 20_03_.

**VOLKSWAGEN OF AMERICA, INC.**

By: _____
Don Hughes
Regional Team Leader

By: _____
Frank Petru
Area Executive

**DEALER**

By: _____
Gian C. Sud
President

Form 97VWXB:h\ogc\97dlragr

## EXHIBIT C

## ADDITIONAL TERMS AND CONDITIONS ADDENDUM

### Facility Construction Agreement

This Additional Terms and Conditions Addendum (this "Addendum") is an integral part of the Volkswagen Dealer Agreement dated _ＪＵＬＹ 3/, 2003_, 2003 (the "Dealer Agreement"), between Volkswagen of America, Inc. ("VWoA"), and Sud's of Peoria, Inc. dba Sud's Volkswagen located at 2350 N. 8th Street, Peoria, IL 61554 ("Dealer").

1.      In order to induce VWoA to enter into this Addendum, and the Dealer Agreement of which it is part, Dealer will construct, at a location approved by VWoA ("New Dealership Premises"), a Marketplace "Dual D" Level Facility (the "Marketplace") including but not limited to, the minimum square footage prescribed in Marketplace requirements, Corporate Identification, Branding Elements, satisfactory compliance with Volkswagen Dealer Operating Standards, and include at a minimum:

      a.      An Exclusive Volkswagen new vehicle showroom with a minimum display area of 1200 square feet and showcase, at all times, not less than 4 new Volkswagen vehicles. The new vehicle showroom will include a minimum of four sales offices. The new vehicle showroom will be used exclusively for Dealer's new Volkswagen sales operations.

      b.      Service facilities properly completed in accordance with VWoA's minimum standards for a Volkswagen dealership facility. Service facilities will include a minimum of 4 dedicated workstalls (with hoists) for the exclusive repair of Volkswagen vehicles. A minimum of 700 square feet of parts storage will be reserved exclusively for Volkswagen parts. A separate Service Write-up Area will be provided exclusively for Volkswagen Service customers.

      c.      From the date of this Addendum and throughout the period that the Marketplace facility is under construction at the New Dealer's Premises , Dealer will conduct Volkswagen dealership operations at the existing, 2350 N. 8th Street, Peoria, IL 61554, authorized dealership location.

2.      **Dealer shall acquire property at a location approved in advance by VWoA for the construction of the Marketplace Dual D Level Facility enumerated in item 1 above within six (6) months of the execution of this Addendum and shall provide VWoA a copy of the Warranty Deed or other proof of ownership of the real property**. Dealer thereafter will adhere to the timetables set forth below for completion of the respective actions described:

      a.      Within three (3) months of acquiring the property, Dealer shall complete the necessary survey of the New Dealership Premises, which survey shall determine the required design and construction for the Marketplace Facility.

EXHIBIT C

Page 2

b.  Within nine (9) months of acquiring the property, Dealer shall complete and submit to VWoA for its review and approval, construction drawings for the Marketplace Facility. If VWoA submits comments to Dealer on the construction drawings, within 15 business days of Dealer's receipt of such comments, Dealer shall complete and submit to VWoA for its review and approval revised construction drawings for the Marketplace Facility. Within 5 business days of Dealer's receipt of VWoA's approval of Dealer's construction drawings, Dealer shall submit such drawings, together with any and all other necessary documents to the appropriate agency or agencies within the City of Peoria, IL for the obtaining of all necessary building permits for the construction of the Marketplace Facility. Dealer shall comply promptly with each requirement of such agency or agencies for the obtaining of such permits.

c.  Within twelve (12) months of acquiring the property, Dealer shall begin construction of the Marketplace Facility.

d.  Within twenty-one (21) months of acquiring the property, Dealer shall complete construction of the facility and have the facility ready for use, in a manner fully approved by VWoA and in accordance with the construction drawings or revised construction drawings approved by VWoA. By that date, Dealer shall occupy the new Marketplace Facility.

e.  Dealer will provide VWoA with a copy of the executed lease for the New Dealer's Premises prior to date of occupation.

3.  If Dealer shall fail to adhere to any timetable or meet any deadline specified in this Addendum, due to delays wholly out of Dealer's control, and despite Dealer's best efforts to meet each deadline or adhere to each timetable, then Dealer may petition VWoA for an extension. To do so, Dealer shall, no later than five days prior to any deadline, notify VWoA in writing of the specific reasons for noncompliance and the new date for compliance. VWoA in its sole discretion, may review Dealer's reasons for failing to meet such deadline, and VWoA in its sole option may accept or disapprove the extension. Regardless of the reason for noncompliance, if Dealer does not timely complete all its undertakings there under, Dealer acknowledges that VWoA would have good cause, under the Illinois Motor Vehicle Code, to terminate this agreement.

4.  It is understood and agreed that VWoA will not approve any new premises for Dealer's Operations which are not constructed:

a.  At a location, and in accordance with building plans, approved in advance by VWoA, and

b.  In accordance with VWoA's standards for dealership buildings.

EXHIBIT C

Page Three

5.      Commencing with the execution hereof, Dealer agrees to provide VWoA with a monthly report on the status on Dealer's progress in its design and renovation of the New Dealership Premises, including the proposed operational date of the facility, when it can be estimated.

6.      If Dealer shall, without written approval from VWoA, fail to comply timely with any provisions of this Addendum, or if Dealer shall fail to comply timely with any of VWoA's requirements at the New Dealership Premises, then Dealer agrees that, regardless of the weight or magnitude of, or reason for, such failure, VWoA may, at its option, terminate the Dealer Agreement of which this Addendum is a part, and shall be under no obligation to offer to enter into any subsequent Dealer Agreement with Dealer. Dealer acknowledges that, in that event, VWoA would have good cause for terminating or failing to renew the Dealer Agreement. If Dealer shall fail for any reason whatsoever to satisfy any of the terms and conditions set forth in the Dealer Agreement, including this Addendum, neither Dealer, its beneficial owners, nor any other person, shall make any claim or demand in any court or before any administrative body against or upon VWoA for reimbursement of any funds expended by them or any of them, or for damages arising out of any termination of or refusal to renew the Dealer Agreement or out of the transactions contemplated by this Addendum.

7.      Dealer acknowledges that VWoA has made no representations, promises or warranties that Dealer's Operations will be financially successful in either the short or long-term. Dealer further understands and acknowledges that its renovation of the Premises will not deprive VWoA of its rights under this Addendum or the Dealer Agreement or any subsequent Dealer Agreement to terminate or fail to renew any such agreement pursuant to the provisions thereof and applicable law.

IT WITNESS WHEREOF, the parties hereto have caused this Addendum to be executed by their duly authorized officers on the day and year first above written.

Dated:    July 31, 2003

**Volkswagen of America, Inc.**

By: _____         By: _____
Don Hughes                                        Frank J. Petru
Region Team Leader                            Area Executive

**Dealer**

By: _____
Gian. C. Sud
President

# EXHIBIT B

VOLKSWAGEN of America, Inc.



# Volkswagen Dealer Agreement Standard Provisions

**Standard Provisions**

# Article 1

**Basic Obligations of VWoA** ................................................................................................ 1

Supply of Authorized Products .......................................................................................... 1
Assistance ........................................................................................................................ 1
Compliance with Ethical Standards ................................................................................... 1

# Article 2

**Basic Obligations of Dealer** ............................................................................................... 1

Sales, Service and Parts Supply ....................................................................................... 1
Compliance with Ethical Standards ................................................................................... 2
Operating Standards and Operating Plan .......................................................................... 2
Disclaimer of Further Liability by VWoA ............................................................................ 2

# Article 3

**General Management and Facility Requirements** ............................................................... 2

Dealer's General Management .......................................................................................... 2
Dealer's Premises ............................................................................................................ 2

# Article 4

**Identification; Advertising** ................................................................................................. 3

Use of Authorized Trademarks ......................................................................................... 3
Signs ............................................................................................................................... 3
Stationery ........................................................................................................................ 3
Advertising ....................................................................................................................... 3

# Article 5

**Sales** ................................................................................................................................ 4

Sales Promotion ............................................................................................................... 4
Sales Performance ........................................................................................................... 4
Sales Outside Area .......................................................................................................... 4
Defective or Damaged Authorized Products ...................................................................... 4
Changes by Dealer to Authorized Products ...................................................................... 5
Product Changes by Dealer Neither Requested by VWoA nor Required by Law ............... 5
Used Car Operations ........................................................................................................ 5