UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| VOLKSWAGEN OF AMERICA, INC., a New Jersey corporation, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 CV 01306 |
| SUD'S OF PEORIA, INC., d/b/a Sud's Volkswagen and Sud's Audi, an Illinois corporation; GIAN SUD, an Illinois resident HARISH SUD, an Illinois resident; and SUNITI SUD, a Wisconsin resident, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**VOLKSWAGEN OF AMERICA, INC.'S OPPOSITION
TO DEFENDANTS' MOTION TO STAY PENDING ARBITRATION**

Plaintiff Volkswagen of America, Inc. ("VWoA") is a motor vehicle importer and distributor. Through a network of authorized dealers, it sells Volkswagen brand motor vehicles to consumers throughout the United States. The defendant Sud's of Peoria, Inc., d/b/a Sud's Volkswagen and Sud's Audi ("Sud's"), is one of those dealers. Defendants Gian Sud, Harish Sud, and Suniti Sud are principals of that company.

VWoA and Sud's entered into a Volkswagen Dealer Agreement in July 2003, which agreement appointed Sud's as a Volkswagen dealer in Pekin. At the same time, in an addendum to the Dealer Agreement, VWoA and Sud's agreed that Sud's would relocate its dealership premises from Pekin to Peoria and that it would construct a new dealership facility at its new location. VWoA and Sud's also entered into a facility construction agreement, in which Sud's agreed to meet certain deadlines with respect to its construction of the new facility.

282924_1

In addition to these documents, VWoA and Sud's also entered into several additional and separate contracts relating to VWoA providing Sud's assistance with respect to the financing of the construction of the new facility. VWoA and Sud's entered into a note, pursuant to which VWoA loaned $500,000 to Sud's and Sud's agreed to make principal and interest payments to VWoA. VWoA and Sud's also entered into a performance incentive agreement, pursuant to which VWoA agreed -- if Sud's remained in compliance with the Volkswagen Dealer Operating Standards and met the construction deadlines in the facility construction agreement -- to provide payments to Sud's that Sud's could use to make the required payments on the loan. Finally, VWoA and Sud's principals entered into personal guaranties, in which the principals agreed to guaranty to VWoA the performance by Sud's of its payment obligations.

Sud's failed to make the first $100,000 principal payment due under the note. Sud's failed to meet the Volkswagen Dealer Operating Standards. Sud's also failed to meet at least four of the construction deadlines. Accordingly, Sud's defaulted on the note. It also failed to meet the requirements for it to become entitled to receive incentive payments from VWoA under the performance incentive agreement.

VWoA has filed the current action to recover the moneys now owed to it by Defendants. Sud's has responded by moving for a stay pending arbitration. Defendants' motion fails to establish a right to arbitration, and the motion, therefore, should be denied.

## FACTUAL BACKGROUND

### I.
### The Volkswagen Dealer Agreement between VWoA and Sud's

VWoA is an importer and distributor of Volkswagen motor vehicles. On July 31, 2003, VWoA entered into a Volkswagen Dealer Agreement with Sud's, thereby appointing Sud's as an authorized Volkswagen dealer in Pekin (the "Dealer Agreement," attached to the Amended

Complaint as Exhibit A). Pursuant to the terms of the Dealer Agreement, VWoA granted Sud's the right to conduct business as an authorized dealer of Volkswagen vehicles, parts, and accessories and to service and repair Volkswagen motor vehicles.

At the time it entered its Volkswagen Dealer Agreement, Sud's also agreed to relocate its dealership premises from Pekin to Peoria and to build a new dealership facility in Peoria. VWoA and Sud's entered into an addendum to the Dealer Agreement, in which Sud's memorialized this commitment (attached to the Amended Complaint as part of Exhibit A). VWoA and Sud's also entered into a Facility Construction Agreement, in which Sud's agreed to meet certain deadlines with respect to its construction of the new facility (the "Facility Construction Agreement," attached to the Amended Complaint at Exhibit F).

## II.
## The Loan Agreements between VWoA and Sud's

VWoA and Sud's also entered into several additional and separate agreements relating to VWoA assisting Sud's with respect to the financing of the new Sud's dealership facility. First, VWoA and Sud's entered into a Memorandum of Understanding – Security and Loan Agreement (the "Note," attached to the Amended Complaint as Exhibit H). Under the Note, VWoA loaned $500,000 to Sud's for a term of five years, and Sud's agreed to make annual principal payments and monthly interest payments to VWoA. Sud's also agreed to meet the various construction deadlines set forth in the Facility Construction Agreement. The Note incorporated the provisions of a Security Agreement and Capital Loan Agreement (the "Capital Loan Agreement," attached to the Amended Complaint at Exhibit G), in which Sud's agreed that any failure by it to make a principal or interest payment when due would constitute an event of default and would cause an acceleration of all amounts due under the Note. The Note also contained an additional default

provision, which provides for the acceleration of all amounts due under the Note if the construction deadlines are not met. *Importantly, the Note contained no arbitration provision.*

Second, VWoA and Sud's entered into a Memorandum of Understanding – Performance Incentive Program (the "Performance Incentive Agreement," attached to the Amended Complaint as Exhibit I). Pursuant to the Performance Incentive Agreement, VWoA agreed to pay $560,000 to Sud's over the course of five years. The dates of the payments were made to correlate to dates that Sud's would become obligated to make principal and interest payments to VWoA under the Note. The payments from VWoA, as a result, would provide funds to Sud's to pay the amounts due to VWoA under the Note. VWoA's obligation to make the payments, however, was expressly conditioned upon Sud's remaining in compliance with the Volkswagen Dealer Operating Standards and meeting the construction deadlines set forth in the Facility Construction Agreement. Sud's agreed in the Performance Incentive Agreement that if it did not meet these requirements, then it would be disqualified from receiving incentive payments from VWoA. *The Performance Incentive Agreement contained no arbitration provision.*

Third, VWoA and the Sud's principals entered into personal guaranties. On February 23, 2003, Gian Sud entered into a personal guaranty with VWoA (the "Gian Sud Guaranty," attached to the Amended Complaint as Exhibit J). On April 28, 2003, Harish Sud and Suniti Sud executed a personal guaranty with VWoA (the "Harish and Suniti Sud Guaranty," attached to the Amended Complaint as Exhibit K). Each of the personal guaranties obligated the guarantors to pay to VWoA any debt owed by Sud's that the dealer failed to pay when due, whether by acceleration or otherwise. *Neither of the guaranties contained an arbitration provision.*

## III.
## The Defaults

On or about July 31, 2003, VWoA paid $500,000 to Sud's as the principal on the Note. On or about August 20, 2003, VWoA paid Sud's $20,000 pursuant to the Performance Incentive Agreement, which amount represented the interest that Sud's would be obligated to pay to VWoA during the first year of the Note. VWoA thus fulfilled its initial obligations under the Note and the Performance Incentive Agreement.

Subsequently, however, Sud's failed to meet its obligations under the contracts. Specifically, Sud's failed to pay to VWoA the first $100,000 annual principal payment due under the Note. Sud's also failed to meet the required Volkswagen Dealer Operating Standards, primarily by failing to display required Volkswagen signs at its dealership facility. Sud's also failed to meet at least four of the construction deadlines incorporated into the Note and Performance Incentive Agreement, including: (a) the deadline for acquiring property on which to construct the new facility and for providing to VWoA a warranty deed or other proof of ownership of such property; (b) the deadline for completing the necessary design survey for the new facility; (c) the deadline for completing and submitting to VWoA construction drawings for the new facility; and (d) the deadline for beginning construction of the new facility. Sud's also failed to respond to several offers made to it by VWoA to renegotiate the required dates for such activities.

## IV.
## The Lawsuit

VWoA filed its Complaint on September 3, 2004, and a First Amended Complaint on March 9, 2005. In the Amended Complaint, VWoA seeks, among other things, judgment for the principal and interest due on the Note and for the $20,000 amount advanced to Sud's under the Performance Incentive Agreement. Defendants, rather than answering the Amended Complaint, have filed a Motion To Stay Pending Arbitration.

# ARGUMENT

Defendants claim that this matter should be stayed on the grounds that the disputes in this lawsuit allegedly must be arbitrated. Defendants, however, fail to meet their burden of establishing a right to arbitration:

- As an initial matter, none of the contracts at issue in the Amended Complaint contain an arbitration provision, and neither the Federal Arbitration Act nor the Illinois Uniform Arbitration Act give Defendants a right to arbitration where no such right is set forth in the applicable contracts.

- Second, Defendants cannot circumvent the missing arbitration clause by arguing that the arbitration provision in the parties' Volkswagen Dealer Agreement works to compel the arbitration of this dispute. The arbitration provision cannot be read into all of the contracts at issue in this case. Moreover, the arbitration provision is rendered unenforceable by 15 U.S.C. §1226, a statute enacted by Congress in 2002.

- Third, Defendants cannot avoid the missing arbitration clause by relying upon the Facility Construction Agreement. VWoA is not suing under such agreement, and, in any event, Defendants have failed to meet their burden of showing that there is a dispute regarding whether the deadlines in that agreement have been missed.

Defendants' motion to stay, therefore, should be denied.

## I.
## Defendants Bear the Burden
## of Establishing a Right To Arbitration.

Under Section 3 of the Federal Arbitration Act, a party seeking to stay federal court proceedings pending arbitration has the burden of showing that the parties' dispute is referable to arbitration. *See Kafka v. Bellevue Corporation*, 1991 U.S. Dist. LEXIS 16795, *3 (N.D. Ill. 1991). If the party cannot meet this burden, then the matter should not be stayed. As stated by the *Kafka* Court:

> In order to stay proceedings pursuant to section 3, the movant must satisfy two conditions: (1) the issue must be referable to arbitration under a written arbitration agreement; and (2) the movant must not be in default in proceeding with arbitration. As the movant, [the party seeking a stay has] the burden of showing that both conditions have been met.

*Id*. (citations omitted). In this case, therefore, Defendants have the burden of showing that the disputes in VWoA's Amended Complaint are referable to arbitration under a written arbitration agreement.

**II.**
**Defendants Have Failed To Meet Their Burden of Establishing That**
**The Disputes In VWoA's Amended Complaint Are Referable to Arbitration.**

*A.     The Contracts in the Lawsuit Do Not Contain Any Written Arbitration Provisions.*

The Amended Complaint consists of claims for breaches of four separate contracts. Count I is a claim for a breach of the Note. Count II is a claim for a breach of the Performance Incentive Agreement. Count III is a claim for the breach of the Gian Sud Guaranty. Count IV is a claim for the breach of the Harish Sud and Suniti Sud Guaranty. There is no arbitration clause in any of these contracts.

Neither the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*, nor the Illinois Uniform Arbitration Act, 710 ILCS 510/1 *et seq.,* provide a right to arbitrate where an underlying contract fails to contain an arbitration provision. Both statutes explicitly require an arbitration provision before they become effective to provide a party with a right to arbitration. For instance, in order to stay these proceedings based upon section 3 of the Federal Arbitration Act, Defendants must show a written arbitration agreement. *Kafka*, 1991 U.S. Dist. LEXIS at 16795, *3. Similarly, like its federal counterpart, the Illinois Uniform Arbitration Act does not create a right to arbitration out of whole cloth; rather, "if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 9, 761 N.E.2d 724, 728 (Ill. 2001) (citations omitted). Neither act, as a result, creates a right to arbitration where one does not exist in the parties' underlying agreements.

As a matter of contract law, therefore, Defendants cannot meet their burden of establishing a right to arbitration. In this regard, it is interesting to note that Defendants have not themselves filed an arbitration demand or otherwise taken any steps to initiate an arbitration proceeding. Defendants request for a stay so that they can do so should be denied.

B.    *The Volkswagen Dealer Agreement Does Not Give Defendants A Right To Arbitrate.*

Because the contracts upon which VWoA is suing lack arbitration provisions, Defendants look elsewhere to attempt to meet their burden of establishing a right to arbitration. Defendants cite the arbitration provision contained in the parties' Volkswagen Dealer Agreement, which provides that certain disputes between VWoA and its dealers, including disputes relating to "payments under incentive programs," must be arbitrated. Defendants contend that the Dealer Agreement is the primary agreement that defines and regulates the parties' relationship, that the arbitration provision in that agreement applies to all disputes that involve incentive programs, and that all the disputes at issue in the lawsuit must arbitrated because an incentive program -- the Performance Incentive Agreement -- is involved. Defendants' argument is misguided.

First, three of the legal counts in VWoA's Amended Complaint have nothing to do with any incentive program. The Note and the two guaranties create obligations to VWoA that are wholly independent of any payment obligations that might separately exist under the Performance Incentive Agreement. These obligations must be separately reviewed. VWoA's legal claims under the Note and the two guaranties are not subject to arbitration because VWoA also has filed a claim under the Performance Incentive Agreement.

Second, and more importantly, enforcement of the arbitration provision in the Volkswagen Dealer Agreement is barred by 15 U.S.C. § 1226. This statute, which was enacted in 2002, provides as follows:

> Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.

15 U.S.C. §1226(a)(2). This provision applies to all "motor vehicle franchise contracts" that are "entered into, amended, altered, modified, renewed, or extended" after November 2, 2002. *See* 15 U.S.C. §1226(a)(1)(B), (b). The statute defines a "motor vehicle franchise contract" as a contract "under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." 15 U.S.C. §1226(a)(1)(B).

The Volkswagen Dealer Agreement falls under the prohibition of 15 U.S.C. § 1226. The Volkswagen Dealer Agreement constitutes a motor vehicle franchise contract under the statutory definition: VWoA is a motor vehicle importer and distributor, and it sells Volkswagen motor vehicles for resale to the public and authorizes its dealers to repair and service Volkswagen motor vehicles through the Dealer Agreement. The Dealer Agreement with Sud's was entered into on July 31, 2003, well after the effective date of the statute. The Dealer Agreement, therefore, is subject to the provisions of 15 U.S.C. §1226.

Existing case law interpreting 15 U.S.C. § 1226 supports this conclusion. In *DaimlerChrysler Vans LLC v. Freightliner of New Hampshire, Inc.*, 2004 U.S. Dist. LEXIS 316, * 1 (D. N.H. 2004), the court denied a request to compel arbitration based upon an arbitration clause in a dealer contract. In that case, the parties entered into various agreements that authorized Freightliner to sell DaimlerChrysler Van's utility vans at various New Hampshire dealerships. *Id*. Those agreements contained mandatory arbitration clauses. *Id*. at *2. When a dispute arose between the parties regarding DaimlerChrysler Van's proposed changes in its utility van distribution program, Freightliner filed an administrative protest with the New Hampshire Vehicle

Industry Board. *Id*. at *3. DaimlerChrysler Van responded by instituting a federal court action to force arbitration. *Id*. The court held that, for the purposes of 15 U.S.C. §1226, the dispute arose under a franchise agreement. *Id*. at *3-4. Therefore, the arbitration clauses in the franchise agreements were ineffectual, and the court denied DaimlerChrysler Van's demand for arbitration. *Id*. at *4-5.

Here, the Dealer Agreement's arbitration clause must similarly be deemed ineffective. The arbitration provision in the agreement, even if it were to apply in the context of the current lawsuit, is ineffectual unless both VWoA and Sud's have consented in writing to arbitration after the controversy between them has arisen. VWoA has not done so. Accordingly, the arbitration provision in the Dealer Agreement is rendered ineffectual by 15 U.S.C. §1226, and Defendants cannot meet their burden of establishing a right to arbitration by relying upon the Volkswagen Dealer Agreement.

C.    *The Facility Construction Agreement Does Not Give Defendants A Right To Arbitrate.*

As a final argument, Defendants contend that this matter should be stayed pending arbitration because the Facility Construction Agreement – an agreement upon which VWoA is not suing – contains an arbitration provision. That provision provides that "[i]n the event of any dispute concerning any matter arising under this Agreement, the parties consent to mandatory binding arbitration . . ." Defendants fail to meet their burden of showing that this provision entitles them to a stay of these proceedings.

The events of default alleged by VWoA include not only Sud's failure to meet the deadlines in the Facility Construction Agreement, but also Sud's failure to make payments when due under the Note and failure to meet certain of the Volkswagen Dealer Operating Standards. These activities have nothing whatsoever to do with the Facility Construction Agreement. The

Facility Construction Agreement cannot compel arbitration of the Note with respect to these defaults.

With respect to Sud's failure to meet the deadlines set forth in the Facility Construction Agreement, *Sud's has failed to establish that there is any actual dispute between the parties relating to Sud's failure to meet these deadlines.* Sud's has not filed an affidavit in support of its motion stating that it has met these dates. The lack of such an affidavit is not surprising: it would appear difficult for Defendants in good faith to contend that they actually have met these deadlines. Defendants cannot meet their burden of establishing an entitlement to arbitration merely by stating that the Note and Facility Construction Agreement reference the Facility Construction Agreement, while at the same time failing to establish that a dispute actually exists between the parties with respect to Sud's performance of its obligations under that document. Without a dispute under the Facility Construction Agreement, there is no basis for staying this matter pending arbitration under that document.

Defendants cannot establish a right to arbitration merely by showing that the Note and Performance Incentive Agreement reference the Facility Construction Agreement. Defendants also must establish a *bona fide* dispute under this document, something that they have not even attempted to do. Accordingly, Defendants have failed to meet their burden of proving an entitlement to arbitration.

## CONCLUSION

All four of the Amended Complaint's claims are based upon specific, individual contracts, none of which contain an arbitration clause. Defendants have no contractual right to arbitration. This lack of right to arbitrate cannot be overcome by Defendants' reference to the parties' Volkswagen Dealer Agreement or the parties' Facility Construction Agreement. Defendants' have failed to meet their burden of establishing a right to arbitration, and their request for a stay pending arbitration should be denied.

Dated: April 18, 2005.

                                        Respectfully submitted,

                                        VOLKSWAGEN OF AMERICA, INC.

                                        By:  s/ James R. Vogler
                                              One of Its Attorneys

James R. Vogler – Lead Counsel (Illinois Bar No. 2908395)
David M. Wiese (Illinois Bar No. 6276172)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.:  (312) 984-3150
E-mail: james.vogler@bfkpn.com

<u>Of Counsel</u>:
Randall L. Oyler (Illinois Bar No. 6209675)
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone No.: (312) 984-3100
Facsimile No.:  (312) 984-3150
E-mail: randall.oyler@bfkpn.com

CERTIFICATE OF SERVICE

David M. Wiese, an attorney, certifies that he caused a copy of the foregoing Defendant Volkswagen of America, Inc.'s Response to Defendants' Motion to Stay Pending Arbitration to be served upon:

| | |
|---|---|
| Philip M. O'Donnell | Richard M. Karr |
| Kingery Durree Wakeman & Ryan, Assoc. | Gordon & Karr, LLP |
| 915 Commerce Building | 45th Floor |
| 416 Main Street | One North LaSalle Street |
| Peoria, Illinois  61602 | Chicago, Illinois  60602 |

via facsimile transmission and United States Mail before the hour of 8:00 p.m. this 18th day of April, 2005.

_____
David M. Wiese

282924_1