UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| VOLKSWAGEN OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.   04-CV-1306 |
| v. ) | |
| ) | |
| SÜD'S OF PEORIA, INC. d/b/a Süd's ) | |
| Volkswagen and Süd's Audi, an Illinois ) | |
| company; GIAN C. SÜD, an Illinois ) | |
| resident, HARISH C. SÜD, an Illinois ) | |
| resident; and SUNITI R. SÜD, an ) | |
| Wisconsin resident, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STAY REGARDING PLAINTIFF'S RESPONSE**

NOW COME Defendants, SÜD'S OF PEORIA, INC. d/b/a Süd's Volkswagen and Süd's Audi, an Illinois company; GIAN C. SÜD, an Illinois resident, HARISH C. SÜD, an Illinois resident; and SUNITI R. SÜD, by their attorneys, Kingery, Durree, Wakeman & Ryan, Assoc., and as and for their Reply and Memorandum of Law in support of their Motion to Stay as to the Response to Plaintiff, VOLKSWAGEN OF AMERICA, and pursuant to the Court's prior Order granting Defendants leave to file this reply, state as follows:

### Introduction

Most of Volkwagen of America's (hereinafter referred to as "VW") opposition to Defendants' motion to stay pending arbitration is devoted to the idea that VW's legal theories arise in whole or part from documents that do not directly contain arbitration clauses. Without recitation to authority, VW reasons that it can ignore the arbitration agreements that it entered

1

into if it has a legal theory arising from a document without an arbitration clause. The lack of legal authority is not surprising because VW's reasoning is contrary to black letter law which holds that it is the facts that controls whether arbitration is required, not the legal theories. (*See* discussion below.)

Because of its erroneous proposition, VW fails to even discuss the central question arising from Defendants' motion - i.e., whether this dispute is in the factual scope of either or both of the arbitration clauses attached to VW's Complaint. As will be discussed below, the dispute is clearly and unequivocally within the scope of both arbitration clauses and therefore the Motion to Stay must be granted.

**Factual Summary**

Although multiple documents were prepared to reflect the parties understandings, VW's Response Brief tacitly admits that all the documents were contemporaneously prepared and were part of one overall transaction (indeed all of the documents have the same execution date of July 31, 2003). The simplified version of the facts were that Defendants became an authorized VW dealer in Pekin, Illinois in July of 2003 with the understanding that the dealership in Pekin would be relocated to Peoria, Illinois, built to certain specifications and completed by certain deadlines specified in the various agreements. VW agreed to provide certain financial considerations for the establishment of a VW compliant facility in Peoria in the form of a "loan" that would be forgiven provided that Defendants met their obligations in the agreements (in fact, the pay-outs under the incentives were more than the loan). As VW acknowledges in its brief, the payments due under the "loan" were timed to coincide with the incentives so that if everything had proceeded as planned the "loan" would never be paid back. As a review of the documents

clearly indicates, the obligation to build the facility in Peoria was made both a part of the parties' Franchise Agreement as well as a separate Facility Construction Agreement (although the provisions of the two agreements substantially overlapped).

It is obviously premature for Defendants to be offering their factual defenses to VW's claims but contrary to the implication of VW in its Brief, Defendants dispute that they are in breach of the contract. To the contrary, Defendants remain committed and are actively pursuing the establishment of a fully compliant VW facility in Peoria, Illinois notwithstanding that this case over money is pending in this Court. To the extent that some insignificant deadlines were allegedly not met by Defendants, Defendants will assert in arbitration (or before this Court) that the alleged breaches were either non-material, were waived by VW, caused by VW's actions, or nullified by VW's violations of the Illinois Motor Vehicle Franchise Act which mandates, among other things, that VW must not act unfairly or arbitrarily (Section 4(b)) and may not impose unreasonable site restrictions (Section 7). *See* 815 ILCS 710(4)(b)[1]; 815 ILCS 710(7).[2]

---

[1] Section 710(4)(b) provides that:

It shall be deemed a violation for any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public.

[2] Section 710(7) provides that:

Unreasonable dealer or franchise restrictions. It shall be unlawful directly or indirectly to impose unreasonable restrictions on the motor vehicle dealer or franchisee relative to transfer, sale, right to renew, termination, discipline, non-competition covenants, site-control (where by sublease, collateral pledge of lease, or otherwise), right of first refusal to purchase, option to

**Legal Discussion**

I.   **The Factual Disputes Of This Case Are Within The Scope Of Both Arbitration Clauses.**

Although VW correctly points out that the party seeking to stay has the initial burden to show that the dispute is referable to arbitration, Defendants have satisfied that burden by pointing to the two arbitration clauses in the documents filed by VW with its Complaint. Once that initial burden has been met, everything else is to be viewed in a light favorable to arbitration. For example, where the scope of the arbitration agreement is fairly debatable and reasonably in doubt the court should decide construction in favor of arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 80 S. Ct. 1347, 1353, 363 U.S. 574 (1960) fn.7.

In light of the federal policy favoring arbitration agreements, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense. *RCM Technologies, Inc. v. Brignik Technology, Inc*., 137 F.Supp. 2nd 550 (D. NJ 2001). In assessing whether a dispute falls within the scope of an arbitration clause, the court's focus is on the factual allegations in the complaint rather than the legal causes of action asserted. *Id.* If the allegations involve matters covered by the parties underlying agreement, the claims must be arbitrated regardless of the legal labels ascribed to the claims. The sole issue before the Court is whether it may be said that the plaintiff's claims fall outside the scope of the agreement. *Id.* In other words, arbitrability is not determined by the legal labels the party chooses to attach to its claims, rather the inquiry must focus on the factual allegations underlying the claims in order to

---

purchase, compliance with subjective standards and assertion of legal or equitable rights.

4

determine whether they raise issues contemplated by the parties to fall within the scope of the arbitration clause. *See High Strength Steel, Inc. v. Svenskt Stal Aktibolag,* 1985 U.S. Dist. LEXIS 23849 at p. 6.

VW did not even discuss the arbitration clauses at issue in its Brief but did discuss the broad issues of the case. VW's characterization of the issues is on page 2 of their Brief which states the following:

> Süd's failed to make the first $100,000 principal payment due under the note. Süd's failed to meet the Volkswagen Dealer Operating Standards. Süd's also failed to meet at lease four of the construction deadlines. Accordingly, Süd's defaulted on the note. It also failed to meet the requirements for it to become entitled to receive incentive payments from VWoA under the performance incentive agreement.

Given VWs own characterization of the issues as well as the information offered by Defendants above it is impossible to conclude that some or all of the issues are outside of the arbitration clauses before this Court. The parties' Franchise Agreement provides that all disputes involving "incentives" are to be arbitrated and VW's own recitation of the issues makes it clear that Defendants qualifying or not qualifying for the incentive is central to the resolution of the case. Since Defendants assert that they do qualify for the incentives, that issue must be resolved and in this case VW dictated that such an issue be resolved by arbitration. The Facilities Construction Agreement arbitration provision states that there shall be mandatory arbitration of any dispute "concerning any matter arising under this Agreement". *See* Exhibit F of the Complaint, ¶ VIII (G). As previously stated, Defendants dispute that there were any material breaches of the facility construction obligations and/or assert that alleged breaches are nullified by waiver, estoppel or the manufacturer's obligations under the Illinois Motor Vehicle Franchise

5

Act. Hence, it is obvious that the arbitration clauses cover all or part of the disputes at issue in this case. When disputes are inextricably intertwined, courts must reject any separate contract theory of avoiding arbitration. *See Cash Convertors U.S.A., Inc. v. Patrick Burns*, 1999 U.S. Dist. LEXIS 1836 at p. 5. In *Cash*, the court rejected an argument very similar to the one made herein.

Lastly, even if it could somehow be argued that part of VW's claims are not covered by the arbitration clauses, the fact that some issues in the case are arbitrable are enough to require the entire case be stayed pending arbitration. *See Abinenti v. Leggett & Platt, Inc.*, 2001 U.S. Dist. LEXIS 329 at p. 4.

## II.     Arbitration Is Not Impossible.

VW offers the surprising argument that this case should not be stayed pending arbitration because arbitration of the dispute is impossible under 15 U.S.C. §1226(a)(2), which according to the case cited by VW "bars a party to a motor vehicle franchise contract from enforcing arbitration clauses in the contract unless all parties consent to the arbitration." *See* page 2 of the slip opinion cited in VW's Brief.

However, VW failed to explain how arbitration is impossible. The Defendants have consented to arbitration and have formally requested it. Attached as Exhibit A is a letter from Defendants' counsel to VW's counsel. Is VW arguing that arbitration is not nevertheless impossible because it will not consent to the arbitration under a clause that VW itself wrote and imposed unilaterally on all of its dealers?

Pending before this Court is a Motion to Stay, not a Motion to Compel arbitration. Arguably, Defendants cannot move to compel arbitration at least with regard to the arbitration

6

clause in the Franchise Agreement. But because Defendants have consented, it is solely within the control of VW whether to pursue its claim in arbitration. However, VW's own Franchise Agreement requires that arbitration be pursued and therefore VW can either pursue arbitration or drop its claim altogether. VW can hardly insist on a federal remedy in contradiction to its own agreement not to pursue a federal remedy.

Alternatively, VW does not even argue that the Facility Construction Agreement arbitration clause is effected by the federal statute. Hence, the presence of that arbitration clause alone requires the granting of the Defendants Motion to Stay.

## Conclusion

For all the foregoing reasons, Defendants respectfully pray that its Motion to Stay be granted and for such other relief as is deemed just.

> Süd's of Peoria, Inc. d/b/a Süd's Volkswagen and Süd's Audi, an Illinois corporation, Gian C. Süd, an Illinois resident, Harish C. Süd, an Illinois resident, and Suniti Süd, an Wisconsin resident,
>   Defendant,
>
>
> By:  s/Phillip M. O'Donnell_____
>         One of their Attorneys

Philip M. O'Donnell
Kingery, Durree, Wakeman & Ryan, Assoc.
416 Main Street, #915
Peoria, Illinois 61602
(309) 676-3612
Fax (309) 676-1329

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
CENTRAL DIVISION, PEORIA

| | |
|---|---|
| **VOLKSWAGEN OF AMERICA, INC.,** a New Jersey Corporation,<br><br>                    Plaintiff,<br>    v.<br><br>**SÜD'S OF PEORIA, INC., d/b/a SÜD'S VOLKSWAGEN and SÜD'S AUDI,** an Illinois Corporation; **GIAN C. SÜD,** an Illinois Resident, **HARISH C. SÜD,** an Illinois Resident, and **SUNITI R. SÜD,** a Wisconsin Resident,<br><br>                    Defendants. | Case No.:  **04 cv 01306** |

### CERTIFICATE OF SERVICE

On May 2, 2005, the undersigned served upon attorneys Brock F. Renner and James R. Vogler by electronic filing the following documents:

**Defendants' Reply and Memorandum of Law**

**in Support of Motion to Stay Regarding Plaintiff's Response**

and via U.S. Mail to:

   Randall L. Oyler
   Barack, Ferrazzano, Kirschbaum, Perlman & Nagalberg
   333 West Wacker Drive
   Ste 2700
   Chicago, IL 60606

                              /S/   **PHILIP M. O'DONNELL**
                                 KINGERY DURREE WAKEMAN &
                                 RYAN, ASSOC.

**PHILIP M. O'DONNELL**
KINGERY DURREE WAKEMAN
& RYAN, ASSOC.
915 Commerce Bank Building
416 Main Street
Peoria, Illinois  61602