**E-FILED**
Thursday, 14 July, 2005  04:05:31 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| VOLKSWAGEN OF AMERICA, INC., )<br>          )<br>          Plaintiff,          )<br>          )<br>     v.          )<br>          )<br>SUD'S OF PEORIA, INC., et al.,)<br>          )<br>          Defendant.          ) | Case No. 04-1306 |

## O R D E R

SUD's of Peoria moves to stay these proceedings pending arbitration, relying on § 3 of the Federal Arbitration Act (9 U.S.C. §§ 1-16). The Court grants this motion in part and denies it in part for the following reasons.

### BACKGROUND

In the summer of 2003, Volkswagen of America and SUD's of Peoria entered into a series of agreements authorizing SUD's to sell and repair Volkswagen cars and products. These agreements also contemplated the construction of a new facility in Peoria, Illinois, where SUD's would conduct this new business.

Volkswagen loaned SUD's $500,000 to help build the new facility. SUD's signed a note requiring it to repay the principal in five installments of $100,000 due annually, along with payments on the interest due monthly (condition #2).[1]  Additionally, the

---

[1] Condition #2 of the note stated:

> **Loan Terms and Repayment Schedule.**  You hereby agree and acknowledge that the . . . loan term is for five (5) years, with interest payments made monthly and a principal payment of $100,000 due at the end of each year for the five-year period.

note expressly required the immediate repayment of the note's balance if SUD's failed to comply with the terms of another agreement, the Volkswagen/Audi Facility Construction Agreement (condition #4),[2] which concerned the acquisition of land and the construction of the new facilities.    The Facility Agreement contained an arbitration clause covering "any dispute concerning any matter arising under this Agreement."

SUD's and Volkswagen also entered into an Incentive Agreement, pursuant to which Volkswagen promised SUD's monetary payments based upon customer satisfaction, vehicle sales, and compliance with the Facility Agreement.    The terms of the Facility Agreement were incorporated into the Incentive Agreement by the following provision:

> **Representation Requirements.**    You hereby agree and acknowledge that you have represented to [Volkswagen] that you will build exclusive showroom facilities . . . within a twenty-seven month period of closing on your Asset Purchase Agreement with Mid/Town Imports, Pekin, IL.    In connection with this construction, you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement. FAILURE TO DO SO AT ANY TIME SHALL DISQUALIFY YOU FROM EARNING THE INCENTIVE PAYMENT IN THE MEASUREMENT PERIOD DURING WHICH THE FAILURE OCCURRED AS WELL THE OPPORTUNITY

---

[2]    Condition #4 of the note stated:

> **Representation Requirements.**    You hereby agree and acknowledge that you have represented to [Volkswagen] that you will build exclusive showroom facilities . . . within a twenty-seven month period of closing on our Asset Purchase Agreement with Mid/Town Imports, Pekin, IL.    In connection with this construction, you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement.    FAILURE TO DO SO AT ANY TIME SHALL REQUIRE IMMEDIATE REPAYMENT OF THE LOAN BALANCE AND ACCUMULATED INTEREST.

2

TO EARN ANY FUTURE PAYMENTS.

Volkswagen advanced a payment of $20,000 to SUD's to be earned later under the Incentive Agreement. In a separate agreement, the Volkswagen Dealer Agreement, the parties agreed to arbitrate "all disputes arising under . . . [p]ayments to [SUD's] in connection with [Volkswagen] incentive programs."

Volkswagen became dissatisfied with SUD's performance under several of the agreements and in September 2004, filed suit against SUD's and its three principal owners (Gian Sud, Suniti Sud, and Harish Sud) by virtue of guarantees[3] they executed. Volkswagen is seeking to recover: (1) the loan principal of $500,000 and interest; and (2) the $20,000 advance under the Incentive Agreement. Volkswagen alleges in its Amended Complaint that SUD's defaulted on the note by failing to pay the first annual payment. Volkswagen also alleges that SUD's defaulted on the note by first breaching the Facility Agreement and then subsequently failing to repay the entire balance on the note immediately. Volkswagen also alleges that SUD's failed to meet the terms of the Incentive Agreement by both failing to comply with the Facility Agreement and by failing to order, install, or display a Volkswagen Facade dealer nameplate, and thereby became obligated to repay Volkswagen's $20,000 advance. SUD's has responded by filing this motion to stay the proceedings pending arbitration of Volkswagen's claims.

---

[3] Relative to the several agreements entered into by Volkswagen and SUD's, the three principal owners of SUD's executed personal guarantees to Volkwagen which provided for "the payment of all indebtedness of [SUD's] now in existence or hereafter arising out of the [Dealer Agreement]."

## DISCUSSION

SUD's relies on the Federal Arbitration Act ("FAA").[4] Title 9 U.S.C. §§ 1-16. The FAA applies to contracts "involving" interstate commerce, 9 U.S.C. § 2, and its applicability in this case is not disputed. Section 3 of the FAA requires a district court, when presented with a motion to stay proceedings pending arbitration, to grant the stay if the issue is referable to arbitration under a written arbitration agreement. *C. Itoh & Co., Inc. v. Jordan Int'l Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977).[5]

A court's order to stay the proceedings pending arbitration is not a determination upon the merits of the case.[6] *AT&T*

---

[4] SUD's also brings this motion under the Illinois Uniform Arbitration Act, 710 ILCS 51/1 et seq. Analysis of this state law would be duplicative of the analysis under the FAA due to the similarities of the two statutes. Since a discussion of this state law would add nothing to the analysis, the focus will be on the FAA.

[5] Volkswagen notes that SUD's has "not themselves filed an arbitration demand or otherwise taken any steps to initiate any arbitration proceedings," and hints that this somehow shows that SUD's cannot meet its burden of establishing its right to arbitration. Volkswagen misunderstands § 3 of the FAA in this respect. "A plaintiff who wants arbitration moves for an order to arbitrate [under § 4]. 9 U.S.C. § 4. [On the other hand, a] defendant who wants arbitration is often content with a stay [under § 3], since that will stymie the plaintiff's efforts to obtain relief unless he agrees to arbitrate." *Cabinetree of Wisc., Inc. v. Kraftmaid Cabintry, Inc.*, 50 F.3d 388, 389 (7th Cir. 1995). Thus, a court may order the stay of proceedings irrespective of whether the defendant has commenced arbitration proceedings.

[6] In its Response to SUD's Motion to Stay Proceedings, Volkswagen argues:

With respect to SUD's failure to meet the deadlines set forth in the Facility Construction Agreement, SUD's has failed to establish that there is any actual dispute

4

*Technologies, Inc. v. Communications Workers of America*, 475 U.S.
643, 649 (1986). When considering a motion to stay proceedings
pending arbitration, a court "may consider only issues relating to
the making and performance of the agreement to arbitrate." *Prima
Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404
(1967). "If the agreement to arbitrate is valid the court has no
further power or discretion to address the issues raised in the
complaint but must [permit] arbitration." *Merit Ins. Co. v.
Leatherby Ins. Co.,* 581 F.2d 137, 142 (7th Cir. 1978). Presently,
this Court is determining the arbitrability of the disputes raised
by Volkswagen in their Amended Complaint. This Court must stay all
arbitrable claims, and "not merely those which the court [deems]
meritorious." *AT&T Technologies, Inc.,* 475 U.S. at 650 (quoting
*United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564,
568 (1960)).

## I. DEFAULT ON THE NOTE

### A. Default on the Note: Compliance with Facility Agreement Terms

The first issue is whether the scope of the arbitration clause
found in the Facility Agreement is broad enough to encompass the
claim that SUD's defaulted on the note by first breaching the
Facility Agreement and then subsequently failing to repay the

---

between the parties relating to SUD's failure to meet
these deadlines. [SUD's] must establish a *bona fide*
dispute under this document, something that they have
not even attempted to do.

This Court will not consider whether there is any "*bona fide*"
dispute under any of the documents at issue.

entire balance on the note immediately (condition #4).[7]    The arbitration clause found in the Facility Agreement covers "any dispute concerning any matter *arising under* [the Facility Agreement]." (Emphasis added.) This "arising under" language has been interpreted by the courts to encompass disputes concerning the interpretation or performance of the contract. *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). It is clear that condition #4 of the note relates to the performance of the Facility Agreement, and therefore is encompassed by the "arising under" language of the arbitration clause.

The complicating factor in this case is the fact that the arbitration clause at issue is contained within one agreement, the Facility Agreement, and the money Volkswagen is attempting to recover is due under a separate agreement, the note. Volkswagen tries to claim that in no way does the dispute over the note raise any issues as to the terms of the Facility Agreement, which contains the arbitration clause. But condition #4 of the note

---

[7] These issues are contained in paragraph 21 of Volkswagen's Amended Complaint, which reads:

> SUD's became obligated to repay immediately the outstanding principal and interest balances on the Note when it failed: (a) to acquire property on which to construct a new Volkswagen facility and to provide a warranty deed or other proof of ownership of the property to [Volkswagen] by January 31, 2004; (b) to complete the necessary survey of the new facility by April 30, 2004; (c) to complete and submit to [Volkswagen] for its review and approval, construction drawings for the new facility by October 31, 2004; and (d) to begin construction of the new facility by January 31, 2005.

6

cannot be divorced from the Facility Agreement so easily.    It is
hard to see how there could be any confusion about the relationship
between condition #4 and the Facility Agreement.    By its very
terms, condition #4 of the note required that if SUD's did not
perform its obligations under the Facility Agreement, then it would
have to repay all of the principal and interest on the note
immediately.

    Even assuming, *arguendo*, that there is some doubt as to
whether the arbitration clause in the Facility Agreement has a
broad enough scope to cover Volkswagen's claim that SUD's defaulted
on the note by first breaching the Facility Agreement and then
subsequently failing to repay the entire balance on the note
immediately, this Court must still resolve the issue of
arbitrability in favor of arbitration.    "[T]here is a general
presumption of arbitrability, and any doubts are to be resolved in
favor of arbitration 'unless it may be said with positive assurance
that the arbitration clause is not susceptible of an interpretation
that covers the asserted dispute.'" *Highlands Wellmont Health
Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77
(6th Cir. 2003) (quoting *AT&T Techs., Inc. v. Communications Workers
of Am.*, 475 U.S. 643, 650 (1986)); See *Moses H. Cone Mem'l Hosp. V.
Mercury Constr. Corp.*, 460 U.S. 1 (1983); *R.J. Distrib. Co. v.
Teamsters, Chauffeurs & Helpers Local Union No. 627*, 771 F.2d 211
(7th Cir. 1985); *United Steelworkers v. Warrior & Gulf Navigation
Co.*, 363 U.S. 574, 582-83 (1960); *Miller v. Flume*, 139 F.3d 1130,
1136 (7th Cir. 1998) ("[A]ny doubts concerning the scope of the
arbitration clause are resolved in favor of arbitration.").

**B.  Default on the Note: Failure to Make Annual Payment**

By contrast, Volkswagen's claim that SUD's defaulted on the note by failing to make the first annual payment (condition #2) is clearly not arbitrable. Volkswagen may proceed with this claim without any further delay. Condition #4 of the Note is arbitrable because of the federal policy of favoring arbitration when the arbitrability of an issue is doubtful. No such doubt exists with respect to condition #2 of the Note. The limited scope of the "arising under" language of the arbitration clause in the Facility Agreement prevents the clause from circumscribing condition #2. SUD's obligation to repay the loan principal every year and the interest every month was wholly independent of their obligations under the Facility Agreement.

**II.  BREACH OF THE PERFORMANCE INCENTIVE AGREEMENT**

**A.  Breach of the Performance Agreement: Failure to Order, Install, or Display a Volkswagen Facade Dealer Nameplate.[8]**

At first glance, Volkswagen's claim that SUD's breached the Incentive Agreement by failing to install a dealer nameplate and thereby became obligated to repay Volkswagen's $20,000 advance seems to fall within the arbitration clause in the Volkswagen Dealer Agreement covering "[p]ayments to [SUD's] in connection with [Volkswagen] incentive programs." But it is unnecessary to discuss the issue any further because enforcement of this arbitration clause is barred by the Motor Vehicle Franchise Contract Arbitration Fairness Act of 2001. 15 U.S.C. § 1226. Accordingly,

---

[8] These allegations are contained in paragraph 27 of the Amended Complaint.

8

Volkswagen may proceed with this claim without any further delay.

Section 1226 covers the arbitrability of "Motor Vehicle Franchise Contracts," which are defined as "contracts under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." Section 1226 states that "arbitration may be used to settle [the] controversy *only if after such controversy arises* all parties to such controversy consent in writing to use arbitration to settle such controversy." (Emphasis added.) Here, it would have been necessary for both Volkswagen and SUD's to consent to arbitration after the dispute arose, which has not happened.

SUD's arguments in its reply fail to convince this Court that its decision with respect to the Incentive Agreement should be otherwise. First, SUD's attempts to overcome § 1226 by pointing to the fact that it has "consented to arbitration and ha[s] formally requested it" after the dispute arose. However, § 1226 requires more than one party's unilateral consent or request. "[A]ll parties" must consent to arbitration after the controversy arises, and that has not happened here. Next, SUD's attempts to show Volkswagen's consent to arbitration by pointing out that Volkswagen itself wrote the arbitration clause in the Volkswagen Dealer Agreement. Again, all parties must consent in writing "after" the controversy arises. Finally, SUD's points to the fact that Volkswagen has imposed similar arbitration clauses on other parties in the past. But this is irrelevant in this case. Further, SUD's

9

argues that "[Volkswagen] can hardly insist on a federal remedy in contradiction to its own agreement not to pursue a federal remedy." Volkswagen can do just that if the agreement is made ineffective by § 1226.

## B.  Breach of the Performance Agreement: Failure to comply fully with the terms of the Facility Agreement.[9]

Volkswagen's claim that SUD's breached the Incentive Agreement by failing to comply fully with the terms of the Facility Agreement is not protected from the requirement of arbitration by § 1226. Whether or not SUD's fully complied with the Facility Agreement is clearly subject to arbitration as discussed *infra*.  By incorporating compliance with that agreement as a condition of the Incentive Agreement, Volkswagen essentially waived its right to have a breach determined in a manner contrary to the terms of the Facility Agreement.  Paragraph six of the Incentive Agreement reads as follows:

> **Representation Requirements.**    You hereby agree and acknowledge that you have represented to [Volkswagen] that you will build exclusive showroom facilities . . . Within a twenty-seven month period of closing on your Asset Purchase Agreement with Mid/Town Imports, Pekin, IL.    In connection with this construction you agree to execute a Volkswagen/Audi Facility Construction Agreement and to comply fully with the terms of that Agreement. FAILURE TO DO SO AT ANY TIME SHALL DISQUALIFY YOU FROM EARNING THE INCENTIVE PAYMENT IN THE MEASUREMENT PERIOD DURING WHICH THE FAILURE OCCURRED AS WELL THE OPPORTUNITY TO EARN ANY FUTURE PAYMENTS.

For the same reasons as explained above, in reference to the default of the note by failing to comply with the terms of the

---

[9] These allegations are contained in paragraph 28 of the Amended Complaint.

10

Facility Agreement, the issue of whether the Incentive Agreement was breached by failing to acquire property, complete the necessary survey, submit construction drawings, and begin construction of the facility is arbitrable and is stayed pending arbitration.

IT IS THEREFORE ORDERED that the motion to stay proceedings pending arbitration (Doc. #21) is GRANTED in part and DENIED in part. Volkswagen's claim that SUD's defaulted on the note by first breaching the Facility Agreement and subsequently failing to repay the entire balance on the note immediately is stayed pending arbitration. Volkswagen's claim that SUD's breached the Incentive Agreement by failing to comply with the terms of the Facility Agreement is stayed pending arbitration.    The remainder of the claims, including breach of the Incentive Agreement on bases other than failure to comply with the terms of the Facility Agreement, may proceed in this litigation.    The motions requesting oral argument (Doc. ##21, 26) are DENIED.

ENTERED this $\underline{/3^{th}}$ day of July, 2005.

s/Judge Joe B. McDade
JOE BILLY McDADE
United States District Judge

11